# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

DAVID HALL, *et al.*,

    **Plaintiffs,**

v.

    Case No. 2:16-cv-330
    Chief Judge Edmund A. Sargus, Jr.
    Magistrate Judge Elizabeth P. Deavers

U.S. CARGO AND COURIER
SERVICE, LLC.,

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Motion to Dismiss Plaintiffs' class and collective claims (ECF No. 43) and Plaintiffs' Motion for Conditional Certification, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (ECF No. 43.) Both motions are opposed. Plaintiffs bring their claims based on their purported misclassification as independent contractors. For the following reasons, Defendant's Motion to Dismiss is **DENIED** and Plaintiffs' Motion for Conditional Certification of their FLSA Claim is **GRANTED** subject to conditions outlined within this Opinion and Order.

## I.

Plaintiffs David Hall ("Hall"), Dustin Bryan ("Bryan"), and Nicholas Thompson ("Thompson" collectively, "Plaintiffs") bring suit under the FLSA on behalf of a purported class of similarly situated individuals. Plaintiffs are former contract delivery drivers for Defendant, U.S. Cargo and Courier Service, LLC ("U.S. Cargo"). As a condition of employment all U.S.

Cargo drivers are required to sign a form contract entitled "Independent Contractor Agreement" ("Agreement").

Hall worked as a delivery driver for U.S. Cargo from approximately June 20, 2012 to approximately July 24, 2015. (Second Amen. Compl. ¶ 27.) Over the course of that time period, Hall signed two Agreements, one as an individual and one as an LLC by the name MD Freight. (*Id.* ¶ 28.) Defendant paid Hall a daily flat rate of approximately $179.00 regardless of hours worked, $3.00 per stop, and a $0.75 bonus per piece if he delivered more than three pieces per stop. (*Id.* ¶ 29.) While a driver, Hall asserts he regularly worked five days per week for approximately ten to twelve hours per day. (*Id.* ¶ 31.)

Defendant paid Bryan an unspecified flat daily rate and $3.00 per stop, regardless of how many hours he worked. (*Id.* ¶ 33.) Bryan asserts that he typically worked five days a week for at least fifty hours per week and often worked up to seventy hours per week.

Thompson worked as a delivery driver for Defendant from July 2013 to September 2014. Defendant paid Thompson a flat daily rate and $3.00 per stop, regardless of the hours he worked. (*Id.* ¶ 37.) Thompson asserts he typically worked five days a week for approximately sixty hours per week and up to sixty-seven and one-half hours per week. (*Id.* ¶ 39.)

All three named Plaintiffs signed Agreements with U.S. Cargo. In the Agreements, they waived their right to proceed on a class action basis for any disputes arising from the substance of said Agreements. (*See* Def.'s Exhibits A ¶ 18, B ¶ 18, and C ¶ 18.) The Agreements each state that Plaintiffs agree to "waive all rights to a jury trial, or certification of a class action" with regard to disputes arising from the Agreement. (*See* Def.'s Exhibits A–C.)

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' putative class and collective action claims as contained in the Second Amended Complaint for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Such an action will be dismissed where "there is no law to support the claims made" or where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).[1]

Defendants move to dismiss Plaintiffs' collective and class claims based on the independent contractor agreement Plaintiffs' signed. Specifically, Defendant argues that the class and collective action claims must be dismissed because "Plaintiffs waived their rights to proceed in a class or collective fashion" by signing a waiver in the Agreement and because "Plaintiffs are inadequate representatives of the purported class and collective." (Mot. Dismiss at 1, ECF No. 43.) In the most recent contracts, Plaintiffs and U.S. Cargo agreed to the following:

> Venue: Any dispute or interpretation arising out of or pursuant to this Agreement shall be the subject of a lawsuit filed in Franklin County, Ohio. The Parties expressly agree to subject themselves to personal jurisdiction in any such court, and to accept service of process by certified mail. **The parties further agree to waive all rights to a jury trial, or certification of a class action, in conjunction with any such lawsuit.**

---

[1] Plaintiffs argue Defendant's Motion to Dismiss is premature and should be raised at the conditional certification stage. Because the Court is addressing both motions together, this argument need not be addressed.

3

(Exhibit A ¶ 18, Exhibit B ¶ 18, Exhibit C ¶ 18 (emphasis added).) The Court disagrees.

Although the contracts purportedly waive Plaintiffs' rights to "certification of a class action," the Sixth Circuit has determined that class waivers without an arbitration provision are not valid. *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014), *cert denied*, 135 S. Ct. 1745 (2015). In *Killion*, a number of KeHE employees were discharged, four of whom sued, claiming KeHE misclassified them as exempt from the FLSA and failed to pay them overtime. *Id.* at 577. The plaintiffs sought to certify the suit as a collective action. *Id.* KeHE argued in opposition that the vast majority of the discharged employees signed severance agreements which included waivers of the employees' rights to participate in an FLSA collective action. *Id.* The Sixth Circuit held that employees cannot waive their rights under the FLSA, including their right to join collective actions, where no arbitration agreement exists. *Id.* at 592; *see e.g.*, *Truesdell v. Link Snacks, Inc.*, Case No. 3:14-cv-551, 2015 U.S. Dist. LEXIS 127173, at *7 (W.D. Ky. Sep. 22, 2015) (finding it premature to exclude putative class members from collective action notice based on signed waivers because the Sixth Circuit "has determined that employees cannot normally waive their rights, either substantively or procedurally, under the FLSA.") (citing *Killion*, 761 F.3d at 592)).

Relying on the Sixth Circuit's previous holding in *Boaz v. FedEx Customer Information Services, Inc.*, 725 F.3d 603 (6th Cir. 2013), where the Court rejected an employer's attempt to limit the time period for filing FLSA claims through a waiver, the Court reasoned that employees cannot waive their FLSA rights where there is no "contrary congressional command," such as the presence an arbitration agreement. *Id.* at 590–91 (citing *Boaz*, 725 F.3d at 605)). Accordingly, without an arbitration provision or any other "countervailing federal policy that

4

outweighs the policy articulated in the FLSA," any waiver of employees' collective action rights is invalid. *Id.*

Defendant argues *Killion* is distinguishable from the instant matter for two reasons. (Mot. Dismiss at 11.) First, Defendant asserts that in *Killion*, the plaintiffs brought only collective claims under the FLSA, but the Plaintiffs here have asserted both a putative FLSA collective action claim and a putative state class action claim. (*Id.*) This distinction is important, Defendant argues, because "no Ohio Courts [] have held that class waivers under the Ohio Wage Act or the OPPA are unenforceable." (*Id.*) Defendant, however, provides no Ohio cases finding class waivers enforceable either. Moreover, Defendant does not provide reasoning to support its assertion that plaintiffs' claims should be treated distinctly from the *Killion* plaintiffs' claims because they bring both collective and class action claims. Thus, the Court finds Defendant's attempt to distinguish *Killion* unpersuasive.

Second, Defendant argues that the *Killion* plaintiffs signed a release following the termination of their employment as salesmen that "purported to prevent the *Killion* plaintiffs from suing their former employer at all," while the instant Agreements do not broadly prohibit Plaintiffs from bringing claims in an individual capacity. (*Id.*) The question the Sixth Circuit addressed in *Killion*, however, was not dependent on the breadth of the contract's prohibition, but that it sought to waive class claims outside of an arbitration agreement. *Killion*, 761 F.3d at 591. Indeed, the case Defendant cites to persuade this Court that class waivers are enforceable is outside this circuit and directly disagrees with the *Killion* decision. *Kubischta v. Schlumberger Tech Corp.*, Case No. 15-cv-1338, 2016 U.S. Dist. LEXIS 91556, at *23 (W.D. Pa. July 14, 2016) ("This Court is not persuaded by the reasoning of the Sixth Circuit Court of Appeals."). It

cannot be disputed that this Court is bound by a published decision of the Sixth Circuit. Plaintiffs' class waivers do not contain an arbitration agreement.

Accordingly, following the Sixth Circuit's reasoning, the waivers are unenforceable. Thus, Defendant's Motion to Dismiss is **DENIED**.

### III. MOTION FOR CONDITIONAL CERTIFICATION

This case involves the alleged misclassification of delivery drivers as independent contractors rather than employees, resulting in no paid overtime for work performed in excess of 40 hours per workweek. (Pls.' Mot. Conditional Cert. at 5.) Plaintiffs request that the Court conditionally certify their proposed FLSA class. Defendant, however, urges the Court to deny Plaintiffs' request. Defendant contends that Plaintiffs are not similarly situated to the proposed FLSA class or to one another. (*See* Mem. Opp'n Mot. Conditional Cert., ECF No. 47.)

Congress enacted the FLSA "with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981); *see also* 29 U.S.C. § 202(a). Among the FLSA's provisions is the overtime wage requirement, which requires "employers to compensate employees for hours in excess of 40 hours per week at a rate of 1 1/2 times the employees' regular wages." *Id.*; *see also* 29 U.S.C. § 207(a).

"Independent contractors do not enjoy [the] FLSA's protections," rather, "only employees are entitled to overtime and minimum-wage compensation" under the FLSA. *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (noting that "[t]he FLSA's definition of 'employee' is strikingly broad.") "To effect Congress's broad purpose," however, the Court "must look to see whether a worker, even when labeled as an 'independent contractor,'

6

is, as a matter of 'economic reality,' an employee." *Id.* at 804 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act.")).

To recover unpaid compensation owed under the FLSA, employees can collectively sue their employer. *See* 29 U.S.C. § 216(b). The FLSA establishes two requirements for a collective action. *See id.* The plaintiffs must (1) be "similarly situated" and (2) signal in writing their affirmative consent to participate in the action. *Id.*; *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The certification process in an FLSA collective action typically proceeds in two phases." *Atkinson v. TeleTech Holdings, Inc.*, Case No. 3:14-cv-253, 2015 U.S. Dist. LEXIS 23630, at \*5 (S.D. Ohio Feb. 26, 2015).

During the first stage, which generally takes place prior to or at the beginning of discovery, the Court must determine whether to conditionally certify the FLSA class and whether notice of the lawsuit should be given to putative class members. *Id.* at \*5–6. Because the Court has minimal evidence at this stage, the determination is made using a fairly lenient standard that typically results in conditional certification. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011). A plaintiff need only make a "modest factual showing" that he is similarly situated to the putative class members. *Sisson v. OhioHealth Corp.*, Case No. 2:13-cv-0517, 2013 U.S. Dist. LEXIS 162464, at \*7 (S.D. Ohio Nov. 14, 2013). A plaintiff can make this showing by demonstrating that he and the other putative class members "'suffer from a single, FLSA-violating policy' or [that] their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-cv-18, 2016 U.S. Dist. LEXIS 62276,

at *5 (S.D. Ohio May 11, 2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). If the Court conditionally certifies the FLSA class, notice is distributed to the class, putative class members return the opt-in forms sent to them, and the parties conduct discovery. *See Atkinson*, 2015 U.S. Dist LEXIS 23630, at *6.

The second stage of the certification process comes after discovery has concluded. *Jungkunz v. Schaeffer's Inv. Research, Inc.*, Case No. 1:11-cv-00691, 2014 U.S. Dist. LEXIS 43490, at *19 (S.D. Ohio Mar. 31, 2014). During that stage, the defendant may file a motion to decertify the class, and the Court will reconsider, with greater scrutiny, whether the putative class members are actually similarly situated. *Atkinson*, 2015 U.S. Dist. LEXIS 23630, at *6.

Where conditional certification is sought after discovery has commenced, a slightly elevated standard for granting conditional certification is employed. *See Kampfer v. Fifth Third Bank*, Case No. 3:14-cv-2849, 2016 U.S. Dist LEXIS 37056, at *10 (N.D. Ohio March 22, 2016). This "modest plus" standard "requires an elevated factual showing, something beyond what is alleged in the pleadings and otherwise advancing the ball down the field beyond the pleadings." *Id.*

### A. Similarly Situated

Plaintiffs seek conditional certification of a collective action which includes:

> all individuals who have performed or currently perform delivery services for the Defendant as delivery Drivers within the State of Ohio, at any time from March 15, 2014 through and including the present and until the final resolution of the case, and who have not been paid the statutory minimum and/or overtime wage during anytime in their employment (hereinafter "the FLSA Class").

(Mot. Conditional Cert. at 1, ECF No. 41.) Plaintiffs assert the putative class members are similarly situated as delivery drivers whom Defendant improperly classified as independent contractors.

Defendant, on the other hand, contends that Plaintiffs are not similarly situated among themselves because the manner in which they entered into the Independent Contractor Agreement varies and no single, unifying class-wide policy prohibited Plaintiffs "from taking materially relevant action to display skill, control, and opportunity for profit and loss in highly individualized ways." (Mem. Opp'n Conditional Cert. at 10.) Specifically, some of the plaintiffs signed the Agreement individually whereas others, such as Plaintiff Hall, signed the Agreement under the name of an LLC. (*Id.* at 9–10.) To the contrary, Plaintiffs assert that the Agreement sets forth the same company-wide requirements and standards of service on all drivers and as a result uniformly misclassifies the independent contract drivers ("I.C. Drivers") as independent contractors instead of employees. Moreover, Defendants have confirmed that the requirements of the Agreement applied equally to other independent contractors used by Defendant. (May-Gross Dep. 187:3–22, ECF No. 41-1 ("... this contract is for all contractors.").)

Defendant's argument cannot defeat Plaintiffs' request for conditional certification. The manner in which Plaintiffs signed the Agreement and the effect that had on their earnings is a factual dispute. This Court has consistently declined to resolve factual disputes at the conditional certification stage. *See Hamm v. Southern Ohio Med. Cntr.*, Case No. 1:16-cv-935, 2017 U.S. Dist. LEXIS 215291, at *21 (S.D. Ohio March 10, 2017). Moreover, "plaintiffs are similarly situated when they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Combs v. Twin Grp., Inc.*, Case No. 3:16-cv-295, 2016 U.S. Dist. LEXIS 172797, at *4 (S.D. Ohio Dec. 14, 2016) (quoting *O'Brien*, 575 F.3d at 585)).

To obtain conditional certification, Plaintiffs need only make a modest factual showing that they are similarly situated to the putative class members. *See Comer*, 454 F.3d at 546–47. Plaintiffs have made this showing through declarations stating that they and the putative class members' claims are unified by a common theory–that they have been misclassified as independent contractors when they were indeed employees. (*See* Hall Decl. ¶¶ 3, 8, 12; Bryan Decl. ¶¶ 3, 9, 13; Thompson Decl. ¶¶ 3, 9, 12.) Under the modest plus test, Plaintiffs have shown that all I.C. Drivers were required to comply with Defendant's grooming and appearance standards, which include wearing a uniform selected by Defendant and purchased through a specific supplier as required by Defendant. Plaintiffs also contend that they and other independent contractor drivers receive routes directly from Defendant and that all independent contractor drivers are paid in accordance with the miles and stops within their assigned routes at a rate determined by Defendant. Moreover, Plaintiffs have provided evidence that all I.C. Drivers signed the same Agreement. (May-Gross Dep. 187:3–22, ECF No. 41-1 ("... this contract is for all contractors.").)

Defendant next argues that Plaintiffs cannot identify other drivers who want to join the FLSA Collective Action based on personal knowledge and that Plaintiffs should be required to show sufficient interest by putative class members prior to certification.[2] The Court disagrees

---

[2] Defendant also argues that the Court should disregard Plaintiffs' affidavits, alleging they are not based on personal knowledge and contain hearsay evidence. Plaintiffs aver that the declarations are based on personal knowledge, including knowledge that Defendant paid all I.C. Drivers according to the same system of compensation, all I.C. Drivers signed the same Agreement, and based on personal conversations with other drivers. (Reply in Supp. at 6–7, ECF No. 50.) Accordingly, the Court can infer their personal knowledge. "Moreover, evidentiary issues similar to those raised by Defendant here about admissibility of Plaintiffs' declarations have been repeatedly rejected by district courts in the Sixth Circuit." *Fisher v. Mich. Bell. Tel. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009) (citing *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 639 (W.D. Tenn. 2009); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367–69 (E.D. Tenn. 2006)). "Rather those courts 'have held that plaintiff's evidence on a

and declines to impose such a requirement here. Plaintiffs are not required to provide a showing of interest prior to conditional certification. *See, e.g.*, *Douglas v. GE Energy Reuter Stokes*, Case No. 1:07-cv-077, 2007 U.S. Dist. LEXIS 32449, at *24 (N.D. Ohio April 30, 2007) ("[Defendant] argues that the case should not be treated as a collective action because [Plaintiff] has not shown that any other persons would seek to join the litigation. [Plaintiff] properly responds that no court outside the Eleventh Circuit has imposed such a requirement on plaintiffs"); *Martin v. Psalms, Inc.*, No. 2:10-cv-02532, 2011 U.S. Dist. LEXIS 77245, at *23 (W.D. Tenn. July 15, 2011) ("[T]he Sixth Circuit has neither required [a showing of interest by putative class members], nor held that such a showing is not required."); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("[C]ourts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs . . . .").

Defendant further contends that the proposed putative class is over broad because Plaintiffs seek to represent "all delivery drivers" not just drivers misclassified as independent contractors and Plaintiffs include all of Ohio, not just Columbus. The Court agrees that the proposed class should be limited to plaintiffs classified as independent contractors. As discussed above, Plaintiffs have put forward evidence that, based on the Agreement signed by all I.C. Drivers, that they are not paid overtime compensation. Although Plaintiffs argue that employees are treated similarly, to the extent Defendant asserts control over drivers classified as employees, the Plaintiffs do not argue that employees do not receive overtime compensation and cannot show that they are similarly situated as I.C. Drivers to employees.

---

motion for conditional certification' is not required to 'meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of the litigation would defeat the purpose of the two-stage analysis under Section 216(b).'" *Id.* This Court follows suit and declines to disregard Plaintiffs' affidavits.

Defendant, however, is unable to support the contention that the geographic location of the putative class should be limited to Columbus. Defendant contends that Plaintiffs, who all worked as I.C. Drivers at the Columbus location have made no assertions that drivers in other cities around Ohio are similarly situated. (Mem. Opp'n Conditional Cert. at 13.) Plaintiffs have shown that all I.C. Drivers for Defendant sign the Agreement. Accordingly, at this stage of proceeding, Plaintiffs have made a sufficient showing that they are similarly situated with putative plaintiffs around Ohio. *Musarra v. Dig. Dish, Inc.*, Case No. 2:05-cv-545, 2008 U.S. Dist. LEXIS 110003, at *18–19 (S.D. Ohio March 24, 2008) (denying defendant's request to limit potential class to facility where named plaintiffs worked, reasoning that plaintiffs' affidavits attesting to a companywide policy were sufficient.). Thus, the class should be defined as:

> all individuals who have performed or currently perform delivery services for the Defendant as claimed independent contract delivery Drivers within the State of Ohio, at anytime from March 15, 2014 through and including the present and until the final resolution of the case, and who have not been paid the statutory minimum and/or overtime wage during anytime in their employment.

Accordingly, Plaintiffs have provided sufficient evidence under the modest plus standard to show that they are similarly situated to the proposed class for conditional certification.

### B. Opt-In Notice

Plaintiffs request that the Court approve their proposed opt-in notice and proposed procedure for disseminating the notice to the putative FLSA class members. (*See* Mot. Conditional Cert. at 30–32.) Defendant, in turn, objects to several aspects of the proposed notice and notice procedure.

Courts have authority to supervise notice to putative class members. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio 2011). "By monitoring preparation and

distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989). Accurate and timely notice concerning the pendency of a collective action promotes judicial economy because it discourages class members from filing numerous identical suits and allows them to pursue their claims in one case where the same issues of law and fact are already being addressed. *Id.* at 170.

1. **Language of Notice**

   a. **Notice of Costs**

   Defendant requests that the Notice include language that informs the putative class of potential liability for attorneys' fees and costs. Plaintiffs contend that the inclusion of such information is inappropriate and could unfairly dissuade potential class members from participating in the action. The Court agrees. Accordingly, Plaintiffs are not required to include this information in the Notice.

   b. **Reference to State Claims**

   Defendants object to any reference regarding Plaintiffs' non-FLSA claims in the notice. Plaintiffs' proposed Notice references "Ohio state law" as well as "deductions made by Defendant from the delivery drivers' pay for items such as administrative fees, uniforms, scanners, and lost or damaged cargo." Plaintiffs do not respond to this objection. As such, it is well taken. Plaintiffs will not reference non-FLSA claims in the notice.

   c. **Ability to Retain Counsel**

   Defendant contends that the proposed notice fails to inform potential opt-in parties that they have the right to retain counsel of their own choosing. The Court has previously held that "[i]nforming plaintiffs of their right to choose their own counsel is an appropriate element in a notice." *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1072 (S.D. Ohio 2016)

(quoting *Heaps v. Safelite Sols., LLC*, Case No. 2:10-cv-729, 2011 U.S. Dist. LEXIS 40089, at *22–23 (S.D. Ohio April 5, 2011)). Therefore, the notice shall contain a statement indicating that the opt-in plaintiffs are entitled to be represented by the named Plaintiffs' counsel or by counsel of his or her own choosing.

### d. Contingency Fee Explanation

Plaintiffs proposed Notice includes language that informs the putative class that if they elect Plaintiffs' attorneys as their counsel they will be represented on a contingency fee basis. Defendant contends that the failure to explain contingency fee renders the notice invalid and asks that the notice explain to potential class members that contingency fee "may mean 'that plaintiffs' counsel will take a portion of any settlement or money judgment the class receives.'" (Mem. Opp'n Conditional Cert. at 18.) Plaintiffs counter that "contingency fee" is an understood concept and therefore unnecessary to explain and further, that Defendants only seek to add the explanation in an effort to discourage potential opt-in plaintiffs from participating in the action. The Court believes each position has some merit. The notice shall refer to a "contingency fee, meaning that the lawyers will be paid only if there is a monetary recovery and their fees will be a percent or portion of the recovered amounts."

### e. Defense Counsel's Contact Information

Defendants propose adding the names, addresses, and telephone numbers for all counsel in the Notice. Some courts have approved opt-in notices which include the name of defendant's attorney, the law firm with which that attorney is associated, as well as the defendant's attorney's mailing address and phone number, *see e.g., Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 254–55 (M.D. Tenn. 1996), while other courts have declined to require inclusion of this information, *Gomez v. ERMC Prop. Mgmt. Co., LLC*, Case No. 3:13-cv-01081, 2014 U.S. Dist. LEXIS

91778, at *3 (N.D. Ohio July 7, 2014) (declining to require inclusion of defense counsel's information because "it seems that information only could serve to confuse prospective plaintiffs and perhaps delay their efforts to discuss with [plaintiff's counsel] the potential benefits and costs of joining this collective action."). The Court agrees with the reasoning in *Gomez* and similarly does not "see how this identification offers any useful information to prospective plaintiffs." *Id.* Instead, Plaintiffs shall include a statement in the notice reflecting that Defendant is represented by counsel.

### f. Inclusion of the Case Heading

Defendant asserts that the case heading should be removed from the notice "because it 'could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case.'" (Mem. Opp'n Conditional Cert. at 18.) Plaintiffs' proposed notice, however, also includes the statement, "[t]he Federal Court has not yet decided who will win, and has not taken any position on the merits of the claims. The Federal Court also expresses no opinion as to whether you or anyone else should join the lawsuit." (Pls.' Exhibit Y, ECF No. 41-25.) The Court disagrees with Defendant that inclusion of the case heading is misleading and will allow the heading to remain.

### 2. Method of delivery

Plaintiffs request to send notice to the putative class members by email, first class mail, and/or text messaging. Defendant urges the Court to limit notice to first class mail. Courts traditionally approve only a single method of notification unless there is a reason to believe that method is ineffective. *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). "The trend in this Court, however, is to allow notice by mail and email to ensure that putative class members receive notice of the pending action." *Parker v. Ridge*, Case No.

15

2:17-cv-633, 2018 U.S. Dist. LEXIS 11655, at * 17–18 (S.D. Ohio Jan. 24, 2018); *see also Wysincavage v. Penn Nat'l Gaming, Inc.*, Case No. 2:16-cv-1063, 2017 U.S. Dist. LEXIS 186786, at *20–12 (S.D. Ohio Oct. 23, 2017); *Conklin v. 1-800 Flowers.com, Inc.*, Case No. 2:16-cv-675, 2017 U.S. Dist. LEXIS 126733, at *16–17 (S.D. Ohio Aug. 10, 2017) ("[E]-mail notice 'appears to be in line with the current nationwide trend' and 'advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit.'") (quoting *Atkinson*, 2015 U.S. Dist. LEXIS 23630, at *12); *Fenley*, 170 F. Supp. 3d at 1074 ("[T]his Court has previously allowed plaintiffs to send notice by ordinary mail and electronic mail in the interest of judicial economy.").

This Court has followed the trend and will continue to allow mail and email notice to the putative class members. *Parker*, 2018 U.S. Dist. LEXIS 11655, at *17–18. "The use of two methods will (i) increase the likelihood that all potential opt-in plaintiffs receive notice of the suit and (ii) likely obviate the need to resend notice if an employee's home address is inaccurate." *Id.* at *18; *see also Conklin*, 2017 U.S. Dist. LEXIS 126733, at *16; *Lutz v. Huntington Bancshares Inc.*, Case No. 2:12-cv-1091, 2013 U.S. Dist. LEXIS 56477, at *18 (S.D. Ohio Apr. 19, 2013). Including the third method of texting putative class members, however, is unnecessary and Plaintiffs will not be permitted to text putative class members.

Defendants further object to Plaintiffs' request to send a reminder notice, arguing that a reminder notice would be interpreted as "encouragement by the Court to join the lawsuit." Courts "have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit – and encouraging participation." *Wolfram v. PHH Corp.*, Case No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, at *13–14 (S.D.

Ohio Dec. 21, 2012) (citation omitted). Furthermore, as Plaintiffs are already permitted to send notice to potential opt-in plaintiffs through certified mail and email, the potential for confusion is greater. Accordingly, Plaintiffs request to send a reminder notice to opt-in Plaintiffs who do not respond is not permitted.

### 3. Opt-In Period

Plaintiffs' notice proposes a ninety day opt-in period. Defendant suggests that a thirty day period would be sufficient; arguing that Plaintiffs' proposed period is excessively long. The Court agrees that ninety-days would be too long in this case as Plaintiffs do not expect significant difficulties in locating potential class members. *Cf. Smith v. Generations Healthcare Servs., LLC,* Case No. 2:16-cv-807, 2017 U.S. Dist. LEXIS 106583, at *20 (S.D. Ohio 2017) (allowing ninety day opt-in period because plaintiff's counsel "anticipates significant difficulties in locating all potential class members" due to the high turnover rate in the industry). Here, a forty-five day opt-in period will satisfy the need to prevent delay in this litigation while also allowing potential plaintiffs time to fully consider their options. *See Baden-Winterwood v. Life Time Fitness*, Case No. 2:06-cv-99, 2006 U.S. Dist. LEXIS 53556, at *8–9 (S.D. Ohio August 2, 2006) (allowing a forty-five day opt-in period because the proposed sixty days "would needlessly delay the litigation" and thirty days would be too short).

### III.

For these reasons, Plaintiffs' Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (ECF No. 41) is **GRANTED**.

The Court **CONDITIONALLY CERTIFIES** the following FLSA class: all individuals who have performed or currently perform delivery services for the Defendant as independent

contract delivery Drivers within the State of Ohio, at anytime from March 15, 2014 through and including the present and until the final resolution of the case, and who have not been paid the statutory minimum and/or overtime wage during anytime in their employment.

Within **TWENTY-ONE (21) DAYS** of the issuance of this Opinion and Order, Defendants shall identify all putative class members by providing a list in electronic and importable format of the names, addresses, and email addresses of all current and former independent contractors fitting the class description above.

The Court **APPROVES** Plaintiffs' proposed opt-in notice (ECF No. 41-25) for distribution to the putative class members with the changes detailed above. Within **FOURTEEN (14) DAYS** of receiving the putative class members' contact information from Defendants, Plaintiffs shall send the notices via U.S. mail and email. The putative class members shall then have **FORTY-FIVE (45) DAYS** from the date that Plaintiffs send the notices to join this litigation.

**IT IS SO ORDERED.**

3-9-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**