**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID HALL, DUSTIN BRYAN, AND NICHOLAS THOMPSON, | : | |
| | : | Case No. 2:16-cv-00330 |
| Plaintiffs, | : | |
| | : | Judge Edmund A. Sargus, Jr. |
| v. | : | |
| | : | Magistrate Judge Elizabeth P. Deavers |
| U.S. CARGO AND COURIER SERVICE, LLC, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT SEEKING DISMISSAL OF
COUNTS V AND VI OF THE THIRD AMENDED COMPLAINT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant U.S. Cargo and

Courier Service, LLC ("U.S. Cargo"), through its undersigned counsel, files this Memorandum in

Support of its Motion for Summary Judgment seeking dismissal of Counts V and VI of the Third

Amended Complaint. Defendant requests that this Court enter judgment in favor of Defendant

and against Plaintiff David Hall ("Plaintiff Hall") as to his claims set forth in Counts V and VI of

the Third Amended Complaint for the reasons set forth below.[1]

---

[1]  References to record evidence in this Memorandum are provided in the corresponding
Appendix of Discovery Record Evidence. Doc. 111.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)......................................................................................................3

*Arthur v. Am. Showa, Inc.*,
  625 F. App'x 704 (6th Cir. 2015) ..........................................................................13, 16

*Brenneman v. MedCentral Health Sys.*,
  366 F.3d 412 (6th Cir. 2004) ..............................................................................5, 18

*Celotex Corp.* v. *Catrett*,
  477 U.S. 317 (1986) ....................................................................................................3

*Clark v. City of Dublin, Ohio*,
   178 F. App'x 522 (6th Cir. 2006) .........................................................................3

*Columbus Civil Serv. Comm'n v. McGlone*,
  697 N.E.2d 204 (Ohio 1998) ..........................................................................3, 4, 5, 6

*Collado v. United Parcel Serv., Co.*,
  419 F.3d 1143 (11th Cir. 2005) ...........................................................................8

*E.E.O.C. v. Ford Motor Co.*, (6th Cir. 2015) ................................................................18

*Gecewicz v. Henry Ford Macomb Hosp. Corp.*,
  683 F.3d 316 (6th Cir. 2012) ...........................................................................9, 10, 11, 12

*Green v. BakeMark USA, LLC*,
  683 F. App'x 486 (6th Cir. 2017) ...........................................................................11, 13, 17

*Greer v. Cleveland Clinic Health Sys.-E. Region*,
  503 F. App'x 422, 430 (6th Cir. 2012) ...................................................................7

*Harris v. Challenger Moto Freight, Inc.*,
  No. 3:98CV7288, 1999 WL 1489819 (N.D. Ohio Dec. 10, 1999)
  *aff'd* 22 F. App'x 606 (6th Cir. 2001) .................................................................8, 9

*Jakubowski v. Christ Hosp., Inc.*,
  627 F.3d 195 (6th Cir. 2010) .............................................................................16

*Janette v. Am. Fidelity Grp., Ltd.*,
  298 F. App'x 467 (6th Cir. 2008) .........................................................................4

*Keever v. City of Middletown*,
  145 F.3d 809 (6th Cir. 1998) ..................................................................................15
*Matasy v. Youngstown Ohio Hosp. Co., LLC*,
  95 N.E.3d 744 (Ohio Ct. App. 2017) ......................................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................3

*McDonald v. UAW-GM Ctr. for Human Res.*,
  738 F. App'x 848 (6th Cir. 2018) .............................................................13, 16, 17

*Mohr v. Hoover Co.*,
  97 F. App'x 620 (6th Cir. 2004) .........................................................................9, 10

*O'Neal v. Johns Manville Int'l, Inc.*,
  No. 3:04 CV 7255, 2005 WL 1221822, at *4 (N.D. Ohio May 20, 2005) ...............7

*Regan v. Faurecia Automotive Seating, Inc.*,
  679 F.3d 475 (6th Cir. 2012) ..................................................................................14

*Rorrer v. City of Stow*,
  743 F.3d 1025 (6th Cir. 2014) ................................................................................16

*Robins v. WXIX Raycom Media*,
  No. 1:06CV278, 2008 WL 650330 (S.D. Ohio. Mar. 5, 2008) ....................6, 7, 8, 9

*Sebest v. Campbell City Sch. Dist. Bd. of Educ.*,
  94 F. App'x 320 (6th Cir. 2004) ...............................................................................9

*Shoemaker v. E.I. DuPont de Nemours & Co.*,
  405 F. App'x 16 (6th Cir. 2010) .........................................................................5, 17

*Street v. J.C. Bradford & Co.*,
  886 F.2d 1475 (6th Cir. 1989) ..................................................................................3

*Sullivan v. River Valley School Dist.*,
  20 F. Supp. 2d 1120, 1125 (W.D. Mich. 1998)
  *aff'd* 197 F.3d 804 (6th Cir. 1999)....................................................................10, 11

*Swallows v. Barnes & Noble Book Stores, Inc.*,
  128 F.3d 990 (6th Cir. 1997) ....................................................................................4

**Federal Rules**

Fed. R. Civ. P. 56 ...........................................................................................................2

**Statutes**

Ohio Rev. Code § 4112 *et seq.* .......................................................................................5

Ohio Rev. Code § 4112.01.............................................................................................7

Ohio Rev. Code § 4112.02......................................................................................1, 3, 4

42 U.S.C. § 12111...................................................................................................4, 11

42 U.S.C. § 12112............................................................................................1, 3, 6, 12

42 U.S.C. § 12102.......................................................................................................6

**Regulations**

29 C.F.R. § 1630.2 ............................................................................................6, 7, 11, 12

## I.     INTRODUCTION

Plaintiff Hall improperly asserts that he was terminated on the basis of an alleged disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and Ohio Revised Code § 4112.02.  First and foremost, Plaintiff Hall's claims are fatally deficient because he was an independent contractor which precludes liability under the ADA.  However, even if Plaintiff Hall is improperly construed as an "employee" under the ADA, Plaintiff Hall cannot establish a *prima facie* case under a disability discrimination claim, a reasonable accommodation claim, or an interactive process claim because he was not a "qualified individual with a disability" under the statute.  This Court should enter summary judgment in favor of U.S. Cargo and against Plaintiff Hall as to his disability claims.

## II.     SUMMARY OF UNDISPUTED MATERIAL FACTS

Plaintiffs Hall, Bryan, and Thompson (the "Plaintiffs") are former independent contract delivery drivers of U.S. Cargo.  *See* Doc. 98 at ¶ 1.  The Plaintiffs filed the Third Amended Complaint on February 4, 2019, asserting causes of action based on a purported misclassification as independent contractors rather than employees.  Count V[2] of the Third Amendment Complaint contained claims under the ADA and Ohio Rev. Code § 4112.02, specifically a disability discrimination claim, a reasonable accommodation claim, and an interactive process claim.  As referenced in the Third Amended Complaint, Plaintiff Hall signed two independent contractor agreements with U.S. Cargo – "one as an individual and one as an LLC by the name 'MD Freight.'" *See* Doc. 98 at ¶ 28.  Plaintiff Hall alleged in the Third Amended Complaint that he was diagnosed with Type I Diabetes, and that his diabetes required regular visits to the doctor such that he needed an accommodation to attend doctors' visits.  *See id.* at ¶¶ 58-60.

---

[2]     U.S. Cargo only includes factual averments relevant to Counts V and VI in this Memorandum in Support.

As an independent contractor driver, Plaintiff Hall had a contractual obligation to find a back-up driver to complete his delivery route in the event of his absence – a fact that he was well aware of and indeed reminded of "many times" by multiple U.S. Cargo employees.  Ex. A (Hall Dep. 327:20-328:9).  However, Plaintiff Hall never attempted to find a back-up driver to cover his delivery route when he needed a modified schedule or time off to attend a doctor's appointment.  *See id.* at 329:25-33:8.

As the Third Amended Complaint referenced, on or around July 7, 2015 or July 8, 2015, Gina Gould ("Gould"), one of Plaintiff Hall's supervisors, again reminded Plaintiff Hall of his contractual obligation to find a back-up driver in his absence and, although not legally required, provided him with names of different possible back-up drivers in an attempt to accommodate Plaintiff Hall.  *See* Doc. 98 at ¶ 60; *see* Ex. B (Gould Dep. 65:17-20).  Unsatisfied with this accommodation, Plaintiff Hall indicated to Gould that he did not have time to find a back-up driver and, ultimately, that he was no longer able to fulfill the responsibilities of his delivery route.  *See* Ex. B (Gould Dep. 63:1-64:14).  He later testified that "the whole concept [of attempting to contact one of the numerous back-up drivers Gould suggested] was not realistic."  Ex. A (Hall Dep. 328:4-9).  Without attempting to ever contact any of the suggested back-up drivers, Plaintiff Hall testified that "those people to which you refer were just as busy as I was."  *Id.* at 358:13-17.  Due to Plaintiff Hall's notification to Gould that he was unable to perform his assigned delivery route, the independent contractor agreement was terminated on July 9, 2015.  *See* Doc. 98 at ¶ 63.

## III.    LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The substantive law dictates which facts are material.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court may grant summary judgment where the only dispute is over facts that do not affect the outcome of trial. *Id.* Disputed facts that are immaterial will not bar summary judgment. *See id.* There is no genuine issue of material fact where, after adequate time for discovery, a defendant demonstrates that a plaintiff has failed to present sufficient evidence to establish an essential element of his case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett.* 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the court must look beyond the pleadings to determine whether there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the court must construe all facts in favor of the non-moving party, the mere "scintilla of evidence" in support of the non-moving party's case is insufficient to overcome summary judgment. *Liberty Lobby*, 477 U.S. at 252-55 (citations omitted). If no reasonable jury could return a verdict for the non-moving party, the motion for summary judgment should be granted. *Id.* at 252; *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## IV. ARGUMENT

In Count V of the Third Amended Complaint, Plaintiff Hall improperly contends that he was terminated on the basis of an alleged disability in violation of the ADA, 42 U.S.C. § 12112 *et seq.*, and Ohio Revised Code § 4112.02. Count VI similarly raises a claim for retaliation under the same two statutes. The Sixth Circuit has instructed Ohio federal courts to conduct one analysis under ADA jurisprudence where a plaintiff asserts claims under both the ADA and parallel Ohio statute. *See Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 525 (6th Cir. 2006) ("Ohio state and federal courts rely on cases interpreting the . . . ADA for guidance because of the parallels between ORC 4112 and those federal statutes."); *Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d

204, 206-207 (Ohio 1998) (stating that Ohio state courts may look to ADA jurisprudence when analyzing Ohio Rev. Code § 4112.02). Under both the ADA and Ohio Rev. Code § 4112.02, Plaintiff Hall's claims fail as a matter of law.

Plaintiff Hall's claims are fatally deficient because he was an independent contractor which precludes liability under the ADA. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997). "In order to hold [U.S. Cargo] liable under . . . the ADA, [Plaintiff Hall] must show that [U.S. Cargo] was [his] 'employer' within the meaning of [the ADA]." *Id.* The ADA defines "employee" as an "individual employed by an employer." 42 U.S.C. § 12111(4). "Title I of the ADA prohibits discrimination against individuals with disabilities in the context of the employment relationship" as determined by the "express agreement of the parties, or to the common law principles of agency." *Janette v. Am. Fidelity Grp., Ltd.*, 298 F. App'x 467, 471 (6th Cir. 2008). Plaintiff Hall was an independent contractor, and thus, cannot bring a claim under the ADA.

Here, Plaintiff Hall signed two separate independent contractor agreements with U.S. Cargo and was treated as such at all times under his agreements. *See* Doc. 98 at ¶ 28. By "express agreement of the parties," Plaintiff Hall was not an "employee" under the statute, and is, therefore, barred from bringing a claim under the ADA. *See Janette*, 298 F. App'x at 471. Because Plaintiff Hall was not an "employee" but an independent contractor, Count V is fatally deficient and judgment must be entered on behalf of U.S. Cargo.

U.S. Cargo vehemently denies that the Plaintiffs were mischaracterized as independent contractors. Rather, the Plaintiffs, including Plaintiff Hall, were properly characterized as independent contractors, and thus, Plaintiff Hall's disability discrimination claims fail automatically. However, even if Plaintiff Hall is improperly construed as an "employee" under

the ADA, Plaintiff Hall cannot establish a *prima facie* case under a disability discrimination claim, a reasonable accommodation claim, and an interactive process claim because he was not a "qualified individual with a disability" under the statute. Even if he was a qualified individual with a disability, he failed to adequately request an accommodation that was reasonable. Further, even though U.S. Cargo was under no legal obligation, U.S. Cargo offered a reasonable accommodation that Plaintiff Hall rejected.

In short, Hall cannot prove a *prima facie* case, and regardless his claims still fail because he cannot prove that U.S. Cargo's legitimate, non-discriminatory reason for terminating the independent contractor agreement was pretextual. *See Shoemaker v. E.I. DuPont de Nemours & Co.*, 405 F. App'x 16, 18 (6th Cir. 2010) (applying the *McDonnell Douglas* burden-shifting framework to disability discrimination claims); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (noting that the plaintiff "always retains the ultimate burden of persuasion"). Under any theory of liability, Plaintiff Hall's disability discrimination claims fail, and this Court should enter judgment on behalf of U.S. Cargo.

### a. Plaintiff Hall cannot establish a *prima facie* case of disability discrimination under the ADA because he was not a qualified individual with a disability.

To establish a claim under the ADA, Plaintiff Hall must first prove that: "(1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open or a non-disabled individual replaced him." *Brenneman*, 366 F.3d at 417-18 (internal citations omitted); *McGlone*, 697 N.E.2d at 206 (internal citations omitted) (stating that the test under Ohio Rev. Code § 4112 *et seq.* is: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped,

can safely and substantially perform the essential functions of the job in question"). Plaintiff Hall cannot meet his burden of proof that his alleged disability was covered under the ADA or that he was able to perform the essential functions of the job with or without a reasonable accommodation as required by the statute.

> **i. Plaintiff Hall cannot meet his burden of proving he is a qualified individual with a disability under the ADA as is required for a disability discrimination claim.**

Plaintiff Hall was not a qualified individual with a disability because diabetes is not a disability automatically covered under the ADA. The ADA only prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112. In the Third Amended Complaint, Plaintiff Hall alleges that he was a qualified individual under the ADA or alternatively, he "was a person who was treated as or regarded as a person with a disability or who has a record of having had a disability." *See* Doc. 98 at ¶ 9. Plaintiff Hall has failed to demonstrate sufficient evidence of any of these allegations.

Plaintiff Hall bears the burden of proving that he is an individual with a disability under the ADA by showing: (1) that he has an impairment that substantially limits him in one or more major life activities; (2) that he has a record of such impairment; or (3) that he is regarded by his employer as having an impairment. 42 U.S.C. § 12102(1). The first and second prongs both "require a showing of an impairment that substantially limits a major life activity." 29 C.F.R. § 1630.2.

First, "the mere diagnosis of diabetes in itself is insufficient to prove disability status." *Robins v. WXIX Raycom Media*, No. 1:06CV278, 2008 WL 650330, at *4 (S.D. Ohio. Mar. 5, 2008). "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Id.*

(internal citations and quotations omitted). Although Ohio Rev. Code § 4112.01(A)(16)(a)(iii) includes diabetes as a physical impairment, a physical impairment standing alone "does not necessarily constitute a disability under the statute." *O'Neal v. Johns Manville Int'l, Inc.*, No. 3:04 CV 7255, 2005 WL 1221822, at *4 (N.D. Ohio May 20, 2005) (internal citations omitted). Thus, although Plaintiff Hall contended that he has "a qualifying disability" as "a Type 1 insulin-dependent diabetic," his diabetes diagnosis is not enough to establish that his particular diabetes qualifies as a disability under the ADA. Ex. A (Hall Dep. 317:8-12).

The Southern District of Ohio court has noted that "it is contrary to both the letter and the spirit of the ADA to deem a diabetic whose illness does not impair his or her daily activities . . . disabled simply because he or she has diabetes." *Robins*, 2008 WL 650330, at *4 (internal citations omitted). The Sixth Circuit applies the regulations interpreting the ADA for the test to determine whether an individual is substantially limited in a major life activity – namely, (1) the "nature and severity of the impairment;" (2) the duration or expected duration of the impairment; and, (3) "the actual or expected long-term impact." *Greer v. Cleveland Clinic Health Sys.-E. Region*, 503 F. App'x 422, 430 (6th Cir. 2012) (citing 29 C.F.R. § 1630.2(j)(2)). Thus, "an individual with diabetes must present evidence of the *extent of the limitations* caused by their impairment in terms of his or her own experience." *Robins*, 2008 WL 650330, at *4 (emphasis added). In *Greer v. Cleveland Clinic Health System-East Region*, the Sixth Circuit affirmed the district court's finding that a plaintiff with diabetes was not disabled where he failed to show that his diabetes substantially impaired any of his major life activities. 503 F. App'x at 430. Similarly here, Plaintiff Hall presented no evidence of any major life activity that is substantially impaired by his diabetes.

Here, Plaintiff Hall failed entirely to point to any major life activity substantially impaired by his diabetes. Even if Plaintiff Hall would have alleged that his diabetes substantially impaired his ability to drive – which is not a major life activity – or his ability to work, Plaintiff Hall admitted that his diabetes did not substantially impair his ability to complete his delivery route. *See Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1157-58 (11th Cir. 2005) ("[D]riving is not a major life activity for purposes of the ADA.").

Specifically, Plaintiff Hall admitted that any dietary requirement that he purportedly had did not impact his ability to complete his delivery route. Ex. A (Hall Dep. 357:12-16). He testified that he must "inject insulin two to four times a day," and that he must "keep very strict control of [his] diet . . . and check [his] blood sugar levels regularly." *Id.* at 318:1-11. He "did not often check [his] blood sugar when [he] was on the road." *Id.* at 357:5-16. He "would only test [his] blood if [he] really felt that [he] needed to" because "[i]t only takes a minute." *Id.* Moreover, he carried snacks and sugar with him during his delivery route and confirmed that he could consume a carbohydrate snack while completing his route – further evidencing that Plaintiff Hall's diabetes did not substantially impair a major life activity. *Id.* at 357:17-358:5. Plaintiff Hall did not present any evidence of the "extent of the limitations caused by their impact." *Robins*, 2008 WL 650330, at *4 (emphasis added). In fact, "in terms of his . . . own experience," he was able to manage his diabetes while completing his delivery route. *See id.*

This case is similar to *Harris v. Challenger Moto Freight, Inc.*, where the court granted summary judgment on a diabetic plaintiff's disability discrimination claim because "it is undisputed that when properly treated 'no major life activity is impaired' by plaintiff's diabetes." No. 3:98CV7288, 1999 WL 1489819, at *9 (N.D. Ohio Dec. 10, 1999) *aff'd* 22 F. App'x 606 (6th Cir. 2001). The plaintiff argued that "his doctor advised him 'not to rotate shifts

and failure to adhere to a strict schedule of eating meals and taking insulin injections could endanger his life." *Id.* The court rejected this argument because "there [was] no record evidence that plaintiff was required to rotate shifts in order to treat his diabetes . . . [n]or [wa]s there any evidence that plaintiff . . . was not able to adhere to a strict schedule of eating meals and taking insulin." *Id.* Here, Plaintiff Hall admitted that he was able to properly manage his diabetes during his delivery route. Because he failed to prove that a major life activity is substantially impaired by his diabetes, his diabetes is not considered a "disability" under the ADA, causing his disability discrimination claim to fail as a matter of law.

Second, Plaintiff Hall alleged that he has a record of a disability, but failed to present any evidence demonstrating that "he has a record of an impairment that substantially limits a major life activity." *Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 F. App'x 320, 326 (6th Cir. 2004) (rejecting plaintiff's claim that a prior history of leukemia constituted a record of a disability under the ADA). As discussed above, Plaintiff Hall failed to allege any major life activity that is substantially impaired by his diabetes. The Southern District of Ohio has already recognized that "the mere diagnosis of diabetes in itself is insufficient to prove disability status." *Robins*, 2008 WL 650330, at *4. Thus, Plaintiff Hall's complete failure to allege any facts that he has a record of a disability that substantially impairs a major life activity is fatal to his claim.

Third, to meet the requirement of "being regarded as having such an impairment," Plaintiff Hall must establish that he has been subject to an action prohibited under the ADA because of an actual or perceived physical impairment whether or not the impairment limits or is perceived to limit a major life activity. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (rejecting plaintiff's claim that she was regarded as having a disability where her supervisor only mentioned a few vague references to surgery). In other words, Hall must prove

that U.S. Cargo "mistakenly believe[d] that [his] actual, nonlimiting impairment substantially limits one or more major life activities." *Mohr v. Hoover Co.*, 97 F. App'x 620, 623 (6th Cir. 2004) (affirming summary judgment because plaintiff's employer did not regard her diabetes as a disability). The Sixth Circuit in *Gecewicz* stated that "[b]eing absent from work is not a disability" and any concerns raised by the plaintiff's supervisor dealt with the plaintiff's excessive absenteeism not a perceived disability. *Gecewicz*, 683 F.3d at 321. In fact, mere statements of concern do not rise to the level of "being regarded as having an impairment." *See Sullivan v. River Valley School Dist.*, 20 F. Supp. 2d 1120, 1125 (W.D. Mich. 1998) *aff'd* 197 F.3d 804 (6th Cir. 1999) ("Defendants' concern for Plaintiff's mental condition and their request for further inquiry into Plaintiff's mental condition, are not a sufficient basis from which to infer that they perceived Plaintiff as disabled."). Moreover, "[t]he employer's 'mere knowledge of behavior that could be associated with an impairment' does not show that the employer treated the employee as if the employee were disabled." *Id.*

Here, Hall has failed to prove that his supervisors regarded him as having a disability that qualifies under the ADA. Plaintiff Hall improperly contended that "Dave Goss, another US Cargo supervisor, informed Hall that he would be terminated due to concerns Mr. Goss had about Plaintiff's Type I Diabetes." *See* Doc. 98 at ¶ 62. Plaintiff Hall later admitted that Goss "didn't give [him] an answer" when Plaintiff Hall asked why his contract was terminated. Ex. A (Hall Dep. 128:14-16). Rather, Hall testified that Goss told him: "I'm keeping an eye out for you. I'm concerned about you. I see you in the warehouse huffing and puffing." *Id.* at 23-25. Goss's alleged statements of concern over Plaintiff Hall do not rise to the level of "being regarded as having an impairment." *See Sullivan*, 20 F. Supp. 2d at 1125. Additionally, Goss's alleged "huffing and puffing" comment does not support Plaintiff Hall's argument that U.S. Cargo

supervisors "regarded him" as having a disability because, even if this conversation did occur, U.S. Cargo's "mere knowledge" of behavior that *could* be associated with Plaintiff Hall's diabetes does not show that U.S. Cargo treated Plaintiff Hall as an individual with a disability. *Id.*

In sum, Plaintiff Hall's diabetes is not a disability covered under the ADA, and therefore, this Court should grant U.S. Cargo's motion for summary judgment.

### ii. Plaintiff Hall could not perform the essential functions of the job, and was thus, unqualified under the ADA.

Plaintiff Hall must prove that he is "otherwise qualified for the position, such that [he] can perform the essential functions of the job with or without a reasonable accommodation." *Green v. BakeMark USA, LLC*, 683 F. App'x 486, 491 (6th Cir. 2017). The ADA only protects *qualified* individuals with disabilities. A "qualified individual" is an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA explains that "considerations be given to the employer's judgment as to what functions of a job are essential." *Id.* "A job function is 'essential' if it is 'fundamental' (as opposed to 'marginal'),' such that the position is 'fundamentally altered' if the function is removed." *Green*, 683 F. App'x at 491. A function "may be essential because the reason the positions exists is to perform that function." 29 C.F.R. § 1630.2. The Sixth Circuit explained that an "employee is not considered qualified under the ADA if she is unable to meet the requirements for attendance." *Gecewicz*, 683 F.3d at 320.

Here, Hall was unable to perform the essential functions of the job because he was unable to load and unload his delivery truck, unable to complete his delivery route, and unable to maintain adequate attendance or fulfill his contractual obligation to find a back-up driver – all essential functions of the job – regardless of whether or not he was provided with a reasonable accommodation. As a contract delivery driver, Plaintiff Hall was required to pick freight from the

U.S. Cargo warehouse, load the freight, deliver it to its intended location, and then return any undelivered freight or new freight picked up during his route.  Ex. A (Hall Dep. 58:5-21).  The entire function of attending work and loading and unloading freight existed for Plaintiff Hall to complete his delivery route.  *See* 29 C.F.R. § 1630.2.  Plaintiff Hall admitted that that "[i]f [he] refused to deliver freight, then [he] would have been out of a job."  Ex. A (Hall Dep. 62:10-11).  Thus, he understood that showing up to the warehouse, loading and unloading the freight, and delivering the freight to its intended location were essential functions of a contract delivery driver.  Because he was unable to do these things – a fact which he admitted to Gould when he indicated that he no longer could fulfill the responsibilities of his delivery route – Plaintiff Hall was unqualified under the ADA.  *See* Ex. B (Gould Dep. 63:1-64:14); *see Gecewicz*, 683 F.3d at 320 (attendance may be an essential function).  Plaintiff Hall cannot establish a *prima facie* case of disability discrimination under the ADA, and summary judgment is proper.

### b. Plaintiff Hall cannot meet his burden of establishing a *prima facie* case under a reasonable accommodation claim.

To the extent that Plaintiff Hall adequately alleged a reasonable accommodation claim under the ADA, such claim fails because he did not adequately request a reasonable accommodation and, alternatively, although not required, U.S. Cargo offered a reasonable accommodation to accommodate his need to attend doctors' appointments.  The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  *Id.* at § 12112(b)(5)(A).  To succeed on a reasonable accommodation claim, the Plaintiff must show: "(1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) [U.S. Cargo] knew or had reason

to know of his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 709 (6th Cir. 2015). The Sixth Circuit recognized that "while a part-time work schedule may be a reasonable accommodation in some cases . . ., it is unreasonable in situations where the essential functions of the job requires full-time attendance." *Green*, 683 F. App'x at 491. As discussed above, Plaintiff Hall's claims under the ADA fail because he was not a qualified individual with a disability. His reasonable accommodation claim further fails because he also cannot prove elements (4) and (5).

First, although a modified work schedule may be considered a reasonable accommodation under the ADA, a modified work schedule is unreasonable when the essential function of the job requires attendance. *See id.* The ADA does not require an employer to provide employees with a "job schedule . . . of their choosing." *McDonald v. UAW-GM Ctr. for Human Res.*, 738 F. App'x 848, 853 (6th Cir. 2018) (internal citations omitted). To the question, "[W]hat was the accommodation they refused you?" Plaintiff Hall responded: "I requested that an allowance would be made on several occasions to enable me to attend doctor appointments, and regularly, because of the volume of the work that I was assigned and was required to complete, I was unable to make those appointments." Ex. A (Hall Dep. 325:6-13). As stated above, showing up to the U.S. Cargo warehouse to load and deliver the freight were essential functions of a contract delivery driver. Here, Plaintiff Hall's request for a modified schedule ignores his obligations under the independent contractor agreement, and is unreasonable.

As a contract delivery driver, Plaintiff Hall was required to find a back-up driver for his delivery route on any days he was absent. Ex. B (Gould Dep. 6:17-20). When Plaintiff Hall indicated to Gould that he would need time off to attend a doctors' appointment, Gould reminded

Plaintiff Hall of his responsibility and then suggested multiple names of other drivers for him to contact. *Id.* at 65:2-67:16. Without attempting to call any of the drivers, Plaintiff Hall refused this proposed reasonable accommodation. *Id.* 65:21-66:3. Due to Plaintiff Hall's obligations under the independent contractor agreement and the undisputed fact that he was advised "many times" of those obligation, the request for a modified schedule was unreasonable. *Id.* at 327:20-328:9.

Second, Plaintiff Hall cannot establish that he affirmatively requested a reasonable accommodation related to his disability. *Regan v. Faurecia Automotive Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012) ("An employee has the burden of proposing an initial [reasonable] accommodation.") (internal quotations omitted and alteration in original). The Sixth Circuit in *Regan* followed its sister jurisdictions to find that the ADA does not require an employer to accommodate a request for a more convenient commute. *Id.* Here, Plaintiff Hall's request for an accommodated work schedule for the doctor's appointment scheduled on July 7, 2015, was wholly unrelated to his diabetes. Ex. A (Hall Dep. 353:8-12). Rather, this request dealt with a doctor's appointment for an unrelated skin infection. *Id.* at 353:8-12. Requesting an accommodation wholly outside of a need to accommodate his alleged disability is unreasonable.

Further, Plaintiff Hall did not affirmatively request an accommodation that dealt with his diabetes as evidenced by the fact that the July 7th doctor's visit – the doctor's visit immediately prior to his indication to Gould that he was unable to fulfill the responsibilities of his delivery route – was for a skin infection unrelated to his diabetes. *Id.* at 353:8-12. Plaintiff Hall admitted that he "assumed . . . that [Matt Thiel] understood that [he] was scheduling doctor appointments in the maintenance" of his diabetes. *Id.* at 354:22-355:1. A reasonable jury could not find that Plaintiff Hall's supervisors knew he was requesting an accommodation to attend doctors' appointments

where he admitted that the July 7, 2015 doctor's appointment was for an unrelated skin infection. Thus, Plaintiff Hall did not affirmatively request a reasonable accommodation.

Additionally, even though Plaintiff Hall did not sufficiently request a reasonable accommodation and U.S. Cargo was under no legal obligation to provide an accommodation, U.S. Cargo nonetheless did provide him with the opportunity to modify his schedule to attend doctors' appointments because Gould provided multiple names of other drivers for him to contact to cover his delivery route. Not only was he advised "many times" that he was able to take time off work so long as he found a back-up driver, Gould also suggested possible drivers for Plaintiff Hall to contact. Ex. A (Hall Dep. 327:20-328:2); Ex. B (Gould Dep. 65:24-67:16). Placing liability on U.S. Cargo for Plaintiff Hall's rejection of Gould's proposed accommodation is in direct contravention with ADA law. Plaintiff Hall independently rejected the proposed accommodation presented by Gould because "those people to which you refer were just as busy as I was." Ex. A (Hall Dep. 358:13-17).

Further, although Plaintiff Hall was not a qualified individual with a disability, Plaintiff Hall's rejection of the proposed reasonable accommodation further disqualified him under the ADA. *See Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir. 1998) (affirming the lower court's grant of summary judgment in favor of the employer). In *Keever*, a case affirming an opinion from the Southern District of Ohio, the Sixth Circuit recognized that an individual with a disability "is not required to accept an accommodation, but if he chooses to reject the accommodation, and he 'cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.'" *Id.* (internal citations omitted). Plaintiff Hall's failure to accept the proposed accommodation bars his reasonable accommodation claim.

**c. Plaintiff Hall's interactive process claim is unsupported by facts and law.**

An alleged "failure to engage in the interactive process is not an independent basis for liability." *Matasy v. Youngstown Ohio Hosp. Co., LLC*, 95 N.E.3d 744, 753 (Ohio Ct. App. 2017). Ohio courts do not recognize an interactive process claim as an independent claim. Rather, the "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) (internal citations omitted). Additionally, both the employer and employee must participate in good faith in the interactive process. *McDonald*, 738 F. App'x at 854. Plaintiff Hall bears the burden of establishing that he proposed an initial accommodation. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202-203 (6th Cir. 2010). "However, if the employee never requests a reasonable accommodation the employer's duty to engage in the interactive process is never triggered." *Arthur*, 625 F. App'x at 711 ("[The Plaintiff] places the burden on ASI to engage in the interactive process because [the company's HR manager] knew of [the Plaintiff's] restrictions. However, [the Plaintiff] never triggered such duty because of his failure to request a reasonable accommodation in the first place."). Further, although, "the employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith, . . . taking the extra step of proposing counter accommodations may be additional evidence of good faith." *Jakubowski*, 627 F.3d at 202-203. "If an employer takes that step and offers a reasonable counter accommodation, the employee cannot demand a different accommodation." *Id.* (internal citations omitted). In other words, "an employee cannot force [his] employer to provide a specific accommodation if the employer offers another reasonable accommodation." *McDonald*, 738 F. App'x at 854 (internal citations and quotations omitted). Moreover, the employer can choose an accommodation that "is easier for it to provide." *Id.* (internal citations and quotations omitted).

Here, as discussed above, Plaintiff Hall failed to establish a *prima facie* case showing that he affirmatively proposed an accommodation that was reasonable. He further failed to participate in the interactive process in good faith. Conversely, even though the obligation to participate did not trigger, U.S. Cargo affirmatively and in good faith participated in an interactive process.

Gould testified that she provided the names of various other independent contractors to Plaintiff Hall to contact to cover his delivery route when he needed time off to attend a doctor's appointment. Ex. B (Gould Dep. 65:17-67:11). According to Gould, Plaintiff Hall essentially stated that everyone she suggested was too busy to ask and that he did not have time to find a replacement. *Id.* Plaintiff Hall testified that Gould and other employees at U.S. Cargo had advised him to find a back-up driver to cover his route. Ex. A (Hall Dep. 327:20-328:21). However, without contacting anyone, he independently decided that the other suggested contract drivers were too busy or merely rejected the suggestion in whole. For example, he stated that because he did not know Chuck Drake, "that was not an alternative." *Id.* at 328:10-15.

This unwillingness to even attempt to call other drivers indicates that Plaintiff Hall did not participate in the interactive process in good faith. Rather, he wholly ignored Gould's proposed accommodation. Moreover, as stated above, under Sixth Circuit precedent, U.S. Cargo was neither required to provide Plaintiff Hall's chosen schedule nor was it even required to provide a reasonable accommodation in the form of a modified schedule because attendance and the ability to complete the delivery route were essential functions. *McDonald*, 738 F. App'x at 853; *Green*, 683 F. App'x at 491. Thus, Plaintiff Hall has no legal or factual basis to support an interactive process claim, and this Court should grant U.S. Cargo's motion for summary judgment.

**d. Even if Plaintiff Hall can establish a prima facie case, U.S. Cargo had a legitimate, non-discriminatory reason for eliminating the independent contractor agreement between U.S. Cargo and Plaintiff Hall that was not a pretext for disability discrimination.**

The Sixth Circuit applies the *McDonnell Douglas* burden-shifting framework where there is an absence of direct evidence of discrimination. *Shoemaker*, 405 F. App'x at 18. Because U.S. Cargo can establish a legitimate, non-discriminatory reason for terminating the independent contractor agreement, Plaintiff Hall must demonstrate that the legitimate reason was a pretext for disability discrimination. *Brenneman*, 366 F.3d at 417-18 (internal citations omitted). However, Plaintiff Hall cannot meet this burden. *Id.*

Here, U.S. Cargo had a legitimate, non-discriminatory reason for terminating the contract based on the conversation between Gould and Plaintiff Hall the day before the delivery driver contract was terminated. As discussed above, Plaintiff Hall indicated to Gould, a nondecisionmaker, that he could not fulfill the obligations of the route. Ex. B (Gould Dep. 64:1-14). Gould testified that "David Plaintiff Hall 'had told me that he was thinking about calling Matt and Dave Hammel today and let them know he is not what US Cargo needs to run his route, he said that he cannot fulfill the responsibilities of this route in the way that U.S. Cargo thinks it should be covered." *Id.* at 64:8-14. Therefore, because Plaintiff Hall could not perform the essential functions of his delivery route, U.S. Cargo had a non-discriminatory, legitimate reason for terminating the independent contractor agreement.

Additionally, Plaintiff Hall cannot prove that U.S. Cargo's legitimate reason – he could not perform the required duties for contract delivery driving and he expressed an intent to cancel – for terminating the contract was pretext for disability discrimination. "Actions by nondecisionmakers cannot alone prove pretext." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015). Even

"decisionmakers' statements or actions outside of the decisionmaking process" cannot establish pretext alone. *Id.*

Plaintiff Hall admitted that he did not have any knowledge as to any negative action against him due to his diabetes. *See* Ex. A (Hall Dep. 324:9-25). He testified that he did not "have any knowledge of any other actions on their part" when answering whether he believed "the company took any other negative action against [him] because [he] requested time off to see the doctor." *Id.* at 330:25-331:8. Also, Gould was a nondecisionmaker who did not have the authority to terminate the independent contractor agreement. *Id.* at 75:10-13. Thus, Gould's email to other supervisors indicating her impression that he wanted to terminate the independent contractor agreement, even though the email discussed that Plaintiff Hall stated "he missed another doctor's appointment," does not establish pretext for U.S. Cargo's legitimate, non-discriminatory reason for terminating the contract. Lastly, even if Goss had previously expressed concern for Plaintiff Hall's health, any concern that Goss had expressed was outside of the decisionmaking context. Plaintiff Hall cannot establish that U.S. Cargo's legitimate, non-discriminatory reason for canceling the contract was pretext. Because he cannot meet his ultimate burden of persuasion, his claims must fail.

Finally, for all the reasons set forth above justifying dismissal of Hall's claims arising under Count V, his related claims for retaliation under Count VI fail as a matter of law. Simply put, given that Plaintiff Hall was not protected by the ADA or Ohio law on a disability discrimination theory, his claim for retaliation arising under the same laws should not move forward.

## V.  CONCLUSION

For the foregoing reasons, U.S. Cargo respectfully requests that the Court grant Defendant's motion for summary judgment and dismiss Counts V and VI of the Third Amended Complaint, with prejudice.

Dated:  February 22, 2019                   Respectfully submitted,

*/s/ Chalyn M. Kaufman*
Chalyn M. Kaufman (*pro hac vice*)
James F. Glunt (*pro hac vice*)
Christopher S. Bouriat (*pro hac vice*)
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA  15222
Telephone: (412) 288-3179/4121/4119
ckaufman@reedsmith.com
jglunt@reedsmith.com
cbouriat@reedsmith.com

Jeffrey N. Lindemann (0053073)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio 43215
Telephone: (614) 464-1211
jlindemann@fbtlaw.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

counsel or parties of record electronically by CM/ECF.

*/s/ Chalyn M. Kaufman*
Chalyn M. Kaufman (*pro hac vice*)