UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID HALL, DUSTIN BRYAN,
AND NICHOLAS THOMPSON,

              Plaintiffs,

      v.

U.S. CARGO AND COURIER
SERVICE, LLC,

            Defendant.

Case No. 2:16-cv-330
CHIEF JUDGE EDMUND A. SARGUS, JR.
Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on (1) Defendant's Partial Motion for Summary Judgment on Count III (ECF No. 103), (2) Defendant's Motion for Summary Judgment on All Claims Raised by Plaintiff Thompson (ECF No. 106), and (3) Defendant's Partial Motion for Summary Judgment on Counts V and VI (ECF No. 109). For the reasons that follow, the Court **DENIES** U.S. Cargo's Partial Motion for Summary Judgment on Count III (ECF No. 103), **GRANTS in PART** and **DENIES in PART** the Motion for Summary Judgment on All Claims Raised by Plaintiff Thompson (ECF No. 106), and **DENIES** the Partial Motion for Summary Judgment on Counts V and VI (ECF No. 109).

I.

### A. Procedural Background

Plaintiff David Hall ("Hall"), a former delivery driver for Defendant U.S. Cargo and Courier Service, LLC ("U.S. Cargo"), filed this action on April 13, 2016, against U.S. Cargo alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Ohio Wage Act ("OWA"), and the Ohio Prompt Pay Act ("OPPA"), stemming from U.S. Cargo

allegedly misclassifying Hall as an independent contractor rather than an employee. (ECF No. 1.) Hall also asserted claims for unjust enrichment and interference with his benefits under the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*. ("FMLA"), and sought a constructive trust.

With the Court's permission (ECF No. 17), Hall filed the First Amended Complaint on August 22, 2016 (ECF No. 18). Hall added a disability-related claim under the Americans With Disabilities Act, 42 U.S.C. § § 12111 et seq. ("ADA") and removed his claims under the FMLA.

On November 1, 2017, with the Court's permission (ECF No. 31), Plaintiffs filed a Second Amended Complaint, adding as plaintiffs Nick Thompson ("Thompson") and Dustin Bryan ("Bryan") (collectively "Plaintiffs"), both former delivery drivers for U.S. Cargo, and adding class and collective action claims (ECF No. 32).

On March 9, 2018, this Court granted Plaintiffs' request for conditional class certification under the FLSA. (ECF No. 53.) Twenty-three former delivery drivers opted into this case. After discovery, however, the parties agreed that Plaintiffs were not similarly situated, and that decertification of the class was appropriate. (ECF No. 99.) On February 22, 2019, this Court decertified the class. (ECF No. 102.)

With the Court's permission (ECF No. 97), Plaintiffs filed the Third Amended Complaint, in which they removed the class claims (ECF No. 98). In the Third Amended Complaint, Plaintiffs assert seven claims for relief: (I) Violation of the FLSA; (II) Violation of the Overtime Provisions of the OWA; (III) Violation of the OPPA; (IV) Unjust Enrichment; (V) Disability Claims as to Plaintiff Hall; (VI) Retaliation Claims as to Plaintiff Hall; and (VII) Constructive Trust and other Equitable Relief.

On February 22, 2019, U.S. Cargo filed a Motion for Summary Judgment on Count III (ECF No. 103) and Brief in Support (ECF No. 104), and Plaintiffs filed their Memorandum in

Opposition to U.S. Cargo's Motion on Count III on March 15, 2019 (ECF No. 122). On March 29, 2019, U.S. Cargo filed its Reply in Support of its Motion on Count III. (ECF No. 129.)

On February 22, 2019, U.S. Cargo also filed a Motion for Summary Judgment on All Claims Raised by Thompson (ECF No. 106) and Brief in Support (ECF No. 107). On March 15, 2019, Plaintiffs filed their Memorandum in Opposition to U.S. Cargo's Motion on Thompson Claims. (ECF No. 123.) On March 29, 2019, U.S. Cargo filed a Reply in Support of its Motion on Thompson Claims. (ECF No. 128.)

U.S. Cargo also filed a third motion on February 22, 2019, moving for Summary Judgment on Counts V and VI (ECF No. 109), and Brief in Support (ECF No. 110). Plaintiffs filed their Memorandum in Opposition to U.S. Cargo's Motion on Counts V and VI on March 15, 2019 (ECF No. 124), and, on March 29, 2019, U.S. Cargo filed its Reply in Support of its Motion on Counts V and VI (ECF No. 127).

## B. Factual Background

### 1. Plaintiff David Hall

From June 20, 2012 to July 24, 2015, Hall was a delivery driver for U.S. Cargo in Columbus, Ohio. U.S. Cargo paid Hall a daily flat rate of approximately $179.00. Additionally, U.S. Cargo paid Hall $3.00 per stop, and $0.75 per piece of freight, if he delivered more than three pieces per stop.

According to Hall, he typically arrived at the U.S. Cargo warehouse around 7:30 a.m. and returned around 5:30 p.m. Upon arriving at the warehouse, Hall would receive a Preliminary Manifest from U.S. Cargo, load freight onto his vehicle, submit paperwork to a U.S. Cargo Shift Supervisor, and then receive his route for the day. When Hall returned to the U.S. Cargo warehouse after completing his route, a U.S. Cargo Shift Supervisor would confirm Hall's

3

deliveries for accuracy. Hall typically worked approximately five days per week for ten to twelve hours each day, for a total of 50 to 60 hours per week. Hall estimates that he spent approximately one hour completing paperwork each day.

Hall is a type-1 diabetic. Hall contends that he informed U.S. Cargo about his condition when he was hired on June 20, 2012. Hall's condition required regular visits to his doctor. When working for U.S. Cargo, Hall requested shorter route assignments on certain days or a day off altogether so that he could visit his doctor. U.S. Cargo denied his request. Unable to change his route, Hall missed several scheduled doctor visits on different occasions.

On July 7, 2015, Hall claims he requested an adjusted route so that he could visit his doctor. U.S. Cargo denied his request. Gina Gould ("Gould"), a U.S. Cargo Safety Manager, reminded Hall that his contract required him to find a back-up driver to cover his route when he was absent. Gould provided Hall with the name of one back-up driver. Gould Dep. Tr. at 65:17–20, Ex. 12. Hall explained to Gould that the back-up driver was too busy to cover Hall's shift. Gould Dep., Ex. 12. Hall missed his scheduled appointment. *Id.*

According to Hall, the next morning he again complained to Gould that U.S. Cargo had denied his request for an adjusted schedule so that he could attend his appointment. *Id.* Hall argued that an adjusted route was a matter of safety. He further explained that he had notified U.S. Cargo about his doctor's appointments, but that he was still unable to schedule his appointments around his assigned routes. *Id.*

According to Gould, Hall then mentioned that he had considered calling other U.S. Cargo employees to "let them know that he is not what U.S. Cargo needs to run this route [and] that he cannot fulfill the responsibilities of this route in the way that U.S. Cargo thinks it should be covered." *Id.* Hall then decided not to contact those U.S. Cargo employees because he didn't

4

"want to add [to] what [they] already [had] on [their] plate." *Id.* Hall then left and completed his route.

That day, Gould emailed several U.S. Cargo employees about her discussions with Hall. Gould asked: "Can we take this conversation as an act of wanting to terminate his contract or do we have to wait until … Hall speaks to Matt or David Hammel [(U.S. Cargo's Director of Operations)]?" *Id.*

The next day, on July 9, 2015, Dave Goss ("Goss"), another U.S. Cargo Safety Manager, informed Hall that U.S. Cargo had terminated him due to concerns about Hall's ability to perform his route. That day, Hall received a written notification of termination, effective July 24, 2015.

### 2. Plaintiff Nick Thompson

Thompson worked as a delivery driver for U.S. Cargo from July 2013 to September 2014. U.S. Cargo paid Thompson a flat daily rate, plus $3.00 per stop, regardless of how many hours he worked. Thompson typically arrived at the U.S. Cargo warehouse around 7:00 a.m. and returned to the warehouse around 7:45 p.m. He usually worked five days per week, for approximately 60 hours per week, and oftentimes Hall worked up to 67.5 hours per week.

### 3. Plaintiff Dustin Bryan

Bryan worked as a delivery driver for U.S. Cargo from August 14, 2012 to December 31, 2014, and again from August 17, 2015 to approximately September 17, 2015. U.S. Cargo paid Bryan a flat daily rate, plus $3.00 per stop, regardless of how many hours he worked. Bryan typically worked five days per week, for at least 50 hours per week. Often, Bryan worked up to 70 hours per week.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Assn.*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

As a preliminary matter, U.S. Cargo classified Plaintiffs in this case as independent contractors, maintaining that no employee-employer relationship existed between it and Plaintiffs. Neither party has moved for summary judgment on this issue, which will therefore be decided by a jury. *See Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.1 (6th Cir. 1992) ("The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts, as here, the question is to be resolved by the finder of fact in accordance with the appropriate rules of law.") Although Plaintiffs' statutory claims only apply to employers, the Court will nevertheless address those claims.

## A. U.S. Cargo's Motion for Summary Judgment on Count III (OPPA).

U.S. Cargo moves for summary judgment on Plaintiffs' claims filed under the OPPA, Ohio Rev. Code § 4113.15, which provides for liquidated damages on unpaid wages. The OPPA provides in relevant part:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

Ohio Rev. Code § 4113.15(B).

U.S. Cargo argues that "Plaintiffs' allegations regarding the violations of the OPPA fail as a matter of law because the OPPA does not apply to disputed wages" and the wages here are disputed. Def.'s Brief in Support of its Mot. for Summ. J. at 3 (ECF No. 104). Plaintiffs disagree

that the wages are disputed as that term is defined under the OPPA. Plaintiffs also contend that because the OPPA applies only to wages earned by employees working for employers, it is premature for the Court to consider whether the wages here are disputed or not. The Court agrees.

The main disagreement in this action is whether Defendant properly classified Plaintiffs as independent contractors. If a jury finds that Plaintiffs are properly classified as independent contractors, then the issue of whether the wages are disputed becomes entirely moot since there is no dispute that the OPPA applies only to employees. Therefore, the Court refrains from addressing whether the wages are disputed and from analyzing the merits of U.S. Cargo's arguments. Accordingly, the Court **DENIES** U.S. Cargo's Motion for Summary Judgment on Count Three.

### B. U.S. Cargo's Motion for Summary Judgment on All Thompson's Claims.

In the Third Amended Complaint, Thompson alleges five claims: (Count I) unpaid overtime under the FLSA, (Count II) unpaid overtime under the OWA, (Count III) unpaid wages and overtime under the OPPA, (Count IV) unjust enrichment, and (Count VII) constructive trust.

U.S. Cargo moves the Court to enter judgment in its favor and against Thompson on all claims, arguing they fail for four reasons: (1) the two-year statutory limitation period bars the OWA claim; (2) the OPPA claim fails as a matter of law because the OPPA does not apply to disputed wages; (3) the two-year statutory limitation period bars the FLSA claim, and Thompson cannot demonstrate that U.S. Cargo acted willfully, thereby precluding the three-year exception; and (4) the unjust enrichment and constructive trust claims fail as a matter of law.

#### 1. Thompson's OWA Claim is Barred by the Statute of Limitations.

The statute of limitations for the OWA is two years. *See* Ohio Rev. Code § 4111.01, *et seq.*; *see also* Ohio Rev. Code § 2305.11(A). ("An action ... by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the

nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued."). Thompson concedes that his OWA claim was not asserted within the statutory period. Accordingly, the Court **GRANTS** U.S. Cargo's Motion for Summary Judgment on that claim.

### 2. There is a Genuine Dispute of Material Fact as to Whether the Statute of Limitations Bars Thompson's FLSA Claim.

The FLSA statute of limitations provides that claims to recover unpaid overtime "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

On March 17, 2017, Hall filed a Motion for Leave to Amend to add Bryan and Thompson as plaintiffs. Pl.'s Mot. for Leave to Am. (ECF No. 22.) That motion became ripe on April 7, 2017. (ECF No. 28.) On November 1, 2017, the Court granted that motion and Thompson, Bryan, and Hall filed their Second Amended Complaint. Order on Mot. for Leave to Amend. (ECF No. 3); Pls.' Second Am. Compl. (ECF No. 32). Therefore, if U.S. Cargo's alleged violations were not willful, Thompson may seek relief dating back to November 1, 2015, or March 17, 2015. The Court need not determine the tolling date, however, because Thompson worked for U.S. Cargo until September 2014, and so his FLSA claim is totally barred unless he can establish U.S. Cargo willfully violated the FLSA. Here, U.S. Cargo argues that any violations were not willful, the two-year statute of limitations should apply, and summary judgment should be granted as a result.

Plaintiff bears the burden of proving willfulness. *Twaddle v. RKE Trucking Co.*, No. 2:04-CV-557, 2006 WL 840388 at *3 (S.D. Ohio March 29, 2006). A violation is willful only if an employer knew or recklessly disregarded that its conduct violated the FLSA. *McLaughlin*, 486 U.S. 128, 133 (1988). Mere negligence is insufficient. *Id.* So too is simply establishing an

9

employer's knowledge of the FLSA's requirements. *Campbell v. Kelly*, No. 3:09-CV-435, 2011 WL 3862019, at *10 (S.D. Ohio Aug. 31, 2011) (citing *Twaddle*, 2006 WL 840388 at *3). "Instead, there must be evidence sufficient to create a genuine issue of material fact as to whether the Defendant 'knew or showed reckless disregard' as to its violation of the FLSA." *Id.* (citations omitted). If the plaintiff offers sufficient evidence, "[t]he issue of willfulness in relation to the applicable statute of limitations is to be treated the same as any other factual determinations routinely submitted to a jury." *Petit v. Dale Adams Enterprises*, No. 5:13-CV-612, 2014 WL 1874217, at *12 (N.D. Ohio May 8, 2014) (citations omitted).

Thompson asserts that, because U.S. Cargo was named as a defendant in a previous wage and hour dispute, U.S. Cargo "had notice of … its duty to comply with the mandates of the FLSA, [and therefore there exists] a material issue of fact as to whether its subsequent alleged violations were willful in nature." Pl.'s Memo. in Opp. at 7 (ECF No. 122). The Court agrees.

U.S. Cargo's Director of Human Resources and Risk Management, Bobbi May-Gross ("May-Gross"), testified that U.S. Cargo has received complaints from independent contractors regarding overtime issues and violations. She explained, "[w]e have had complaints. You're talking about forever in the history of the company, or—I mean, honestly—." May-Gross Dep. Tr. at 82:2–83:3. When asked whether the Department of Labor had sent U.S. Cargo a complaint in the last five years, May-Gross responded, "Uh-huh." *Id.* It is unclear whether she answered in the affirmative or negative. May-Gross then testified that, in the last five years, no driver has sued U.S. Cargo in Ohio and the Ohio Department of Commerce has not sent U.S. Cargo any complaints. *Id.* She did, however, recall an independent contractor from Pennsylvania who sued U.S. Cargo for overtime violations in 2015. *Id.* A break was taken at that point during the deposition and the topic was never discussed again. *Id.*

While "simply showing that the Defendant had actual notice of the requirements of the FLSA is insufficient to satisfy the willfulness standard," *Twaddle*, at *3, an "employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act ... if the employer should have inquired into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3). Viewing the evidence in a light most favorable to Thompson, the Court concludes that a reasonable jury could find that U.S. Cargo should have inquired into whether its conduct complied with the FLSA and that U.S. Cargo failed to adequately inquire further.

In conclusion, Thompson has proffered sufficient evidence to raise a genuine dispute about whether U.S. Cargo knew or showed reckless disregard as to the alleged FLSA violations. Therefore, a jury must decide if Thompson is entitled to the three-year statute of limitation exception. Accordingly, the Court **DENIES** U.S. Cargo's Motion for Summary Judgment pertaining to Thompson's FLSA claim.

### 3. Thompson's OPPA Claims Survive Because There Is a Genuine Dispute as to U.S. Cargo's Employer Status.

As discussed *supra*, the Court **DENIES** U.S. Cargo's Motion for Summary Judgment regarding Plaintiffs' Count III OPPA claims because a genuine issue exists as to whether Plaintiffs are independent contractors or employees.

### 4. Thompson's Unjust Enrichment Claim Fails as a Matter of Law.

In the Third Amended Complaint, Thompson alleges U.S. Cargo was unjustly enriched by "subjecting [Thompson] to deductions, charges, and/or expenses that are typically borne by employers." Pls.' Third. Am. Compl. at ¶ 92 (ECF No. 98). Under Ohio law, Thompson must establish the following elements to prove a claim of unjust enrichment: (1) Thompson conferred a benefit upon U.S. Cargo; (2) U.S. Cargo knew about this benefit; and (3) U.S. Cargo retained the

benefit "under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (citation omitted).

U.S. Cargo argues that Thompson relies solely on three contracts between the parties to establish his unjust enrichment claim: (1) the Independent Contractor Agreement; (2) the OH/PA Equipment and Service Agreement Between Owner and Carrier; and (3) the Independent Contractor Scanner/Software Authorization Form. *See* Def.'s Mot. for Summ. J., Exs. C, H, I. Further, U.S. Cargo asserts that these contracts govern the relevant deductions, charges, and/or expenses that Thompson alleges unjustly enriched U.S. Cargo. Therefore, U.S. Cargo concludes, Thompson cannot recover for unjust enrichment since the basis of his claim is governed by an express agreement between the parties. The Court agrees. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) ("Because unjust enrichment is a quasi-contractual remedy, ... a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation.").

The three contracts that U.S. Cargo proffers governed the relevant deductions, charges, and expenses that Thompson alleges unjustly enriched U.S. Cargo. *See* Def.'s Mot. for Summ. J., Ex. C ("charge-back or offset items" including loans, advances, sums owed, cost of operation, fines and penalties, uncollected or unremitted customer charges, damages or costs for trips, costs of unreturned or damaged property); Ex. H ("costs of operation of Equipment" includes fuel, fuel taxes, permits, tolls, base plates and licenses, maintenance costs, lubricants, tires, insurance, taxes, damages caused by owner, and fines); Ex. I (leasing a scanner "will be deducted from my weekly settlement pay"). Accordingly, Thompson cannot succeed on an unjust enrichment claim.

Moreover, in his memorandum in opposition, Thompson did not address U.S. Cargo's arguments against his unjust enrichment claim. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir.

12

2009) ("The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion."). Therefore, the Court **GRANTS** U.S. Cargo's Motion for Summary Judgment regarding Thompson's unjust enrichment claim.

### 5. Thompson's Request for a Constructive Trust Fails as a Matter of Law.

Next, U.S. Cargo argues that the Court must deny Thompson's request for a constructive trust because his unjust enrichment claim failed. The Court agrees. Under Ohio law, a constructive trust is an equitable remedy that may be imposed where a party has acquired property by fraud or unjust enrichment. Without a claim for unjust enrichment or fraud, a plaintiff cannot maintain a constructive trust request. *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 889 N.E.2d 1066, 1076 (Ohio Ct. App. 2008). Because Thompson's unjust enrichment claim fails, his constructive trust claim also fails. Accordingly, the Court **GRANTS** U.S. Cargo's Motion for Summary Judgment on Thompson's request for a constructive trust.

### C. U.S. Cargo's Motion for Summary Judgment on Counts V and VI (Hall's Claims).

In Counts V and VI, Hall alleges U.S. Cargo violated the ADA, 42 U.S.C. § 12112, *et seq.* As a preliminary matter, to hold a defendant liable under the ADA, a plaintiff must establish that the defendant was his "employer" within the meaning of the ADA. *Swallows v. Barnes & Noble Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997). The parties dispute, yet do not argue, whether U.S. Cargo employed Hall. This is a genuine issue of material fact that precludes summary judgment. Nevertheless, the Court will address the parties' arguments regarding Hall's ADA claims.

In Count V of the Third Amended Complaint, Hall alleges that U.S. Cargo terminated him based on his disability,[1] thereby violating the ADA, 42 U.S.C. § 12112, *et seq.*, and Ohio Revised

---

[1] In Count VI, Hall similarly alleges U.S. Cargo retaliated against him in violation of those same statutes, but U.S. Cargo did not move for summary judgment on the retaliation claim.

Code § 4112.02.[2] In Count V, Hall also asserts claims of failure-to-accommodate and failure to engage in an interactive process.

**1. Hall's Disability Discrimination Claim.**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). "There are two ways that a litigant can prove discrimination—directly or indirectly—each with its own test." *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). "Distinguishing between cases that involve direct evidence of discrimination and those in which the plaintiff is not able to introduce direct evidence is vital because the framework for analyzing the two kinds of cases differs." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016).

Under the direct method, a plaintiff must show (1) that he is an individual with a disability, and (2) that he is otherwise qualified for his job despite the disability "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Ferrari*, 826 F.3d at 891. Once a plaintiff has established these elements, the defendant must prove that a challenged job criterion is essential or that a proposed accommodation will impose an undue hardship on the defendant. *Id.*

The indirect test applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Ferrari*, 826 F.3d at 891–92. To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a *prima facie* case by showing that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer

---

[2] The Court addresses Hall's state and federal claims collectively. *See Clark v. City of Dublin, Ohio*, 178 Fed. Appx. 522, 525 (6th Cir. 2006) ("Ohio state and federal courts rely on cases interpreting the … ADA for guidance because of the parallels between ORC 4112 and those federal statutes.") (citations omitted).

knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Id.* (citation omitted). If a plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to offer a legitimate explanation for its action. *Id.* at 892. If the defendant does so, the burden shifts back to the plaintiff who must introduce evidence establishing that the defendant's proffered explanation is pretextual. *Id.*

Neither party asserts that any direct evidence exists, and both apply the indirect test. This is not a case where "an employer admits (or the evidence establishes) that its decision was based upon the employee's disability." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315–16 (6th Cir. 2012) (en banc). The Court will therefore proceed with the burden-shifting framework that applies to indirect-evidence cases.

Turning to the indirect evidence framework, U.S. Cargo addresses only the first two factors. Therefore, the Court need only analyze whether U.S. Cargo has proved that Hall is not a qualified individual or does not have a disability.

a. There Is a Genuine Dispute as to Whether Hall is Disabled under the ADA.

To establish a disability under the ADA, Hall must prove that: (1) he has an impairment that substantially limits him in one or more major life activities; (2) he has a record of such impairment; or (3) his former employer regarded him as having an impairment. 42 U.S.C. § 12102(1). Hall has type 1 diabetes. He is insulin-dependent, and he must keep strict control of his diet. Hall Dep. Tr. at 318:9–11. When his blood sugar is low, Hall must sit down because his mobility and ability to stand are impaired. *Id.* at 318:23–319:3.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. 12102(1)(A). Major life activities include, but are not limited to, eating, standing, thinking, and working. 42 U.S.C. § 12102(2)(A). Additionally, a major life activity includes the operation of a major bodily function, including but not limited to, digestive, neurological, circulatory, and endocrine functions. 42 U.S.C. § 12102(2)(B).

The term "major" shall not be interpreted strictly to create a demanding standard. 29 C.F.R. § 1630.2(i)(2). To determine whether a disability substantially limits major life activities, the Code of Federal Regulations directs courts to compare the person claiming a disability to "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Further, an "impairment need not prevent, or significantly or severely restrict ... a major life activity" to be substantially limiting. *Id.* An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(vii).

Arguing that Hall is not "disabled" under the ADA, U.S. Cargo relies on *Greer v. Cleveland Clinic Health System-East Region*, 503 Fed. Appx. 422 (6th Cir. 2012). In *Greer*, the Sixth Circuit affirmed the district court's finding that a plaintiff with diabetes was not disabled under the ADA because he failed to establish that his diabetes impaired any of his major life activities. *Id.* at 430. The Court explicitly found, however, that the ADA Amendments Act of 2008 did not apply. *Id.* at n.1. Therefore, the Sixth Circuit noted, the plaintiff did not "get the benefit of the ADA Amendments Act that defines 'disability' more broadly." *Id.* at 430; *see id.* at n.2 ("The amendments to the ADA reject the [previous] requirement ... that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures.") (citing 42 U.S.C. § 12101 n. Sec. 2(b)(2)). Indeed, U.S. Cargo cites only cases that applied the prior definitions and standards of "disability," "major life activity."

and "substantially impaired," which were narrower than the definitions and standards that apply in this case. *See Hostettler v. College of Wooster*, 895 F.3d 844 (6th Cir. 2018).

Under the post-2008 ADA, the definition of "disability" "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). That is because the ADA's primary concern is "whether covered entities have complied with their obligations and whether discrimination has occurred...." 29 C.F.R. § 1630.2(j)(1)(iii). It is "not whether an individual's impairment is a disability." *Hostettler*, 895 F.3d at 853.

U.S. Cargo correctly points out that a "mere diagnosis of diabetes does not in and of itself prove disability status." *Robbins v. WXIX Raycom Media*, No. 1:06-cv-278, 2008 WL 650330, at *4 (S.D. Ohio March 5, 2008). But under the ADA, as amended, "a major life activity includes the operation of a major bodily function including … [the] endocrine function." 42 U.S.C. § 12102(2)(B), and, pursuant to 29 C.F.R. § 1630.2(j)(3)(iii), "it should be easily concluded that … diabetes substantially limits endocrine function." So, while a mere diabetes diagnosis does not in and of itself prove a plaintiff is disabled, it should still be easily conclusive.

Here, Hall has submitted evidence that his diabetes has affected his major life activities of standing and working, as well as his endocrine function. He explained that he regularly checks his blood sugar and eats snacks to avoid hypoglycemic episodes. Hall Dep. Tr. at 317:23–318:6. Further, Hall's condition required him to inject himself with two to four shots of insulin each day. *Id.* Hall also testified that he regularly required short breaks to sit down when his blood sugar was low because his mobility and ability to stand were impaired. Therefore, the Court concludes that, under the amended ADA's broad standard, there is a genuine dispute of material fact regarding whether Hall is disabled.

<u>b. There Is a Genuine Dispute as to Whether Hall Is a "Qualified Person."</u>

The second prong of the *prima facie* test for a disability discrimination claim requires Hall to prove that he was "otherwise qualified for the position, such that [he could] perform the essential function of the job with or without reasonable accommodation." *Green v. BakeMark USA, LLC*, 683 Fed. Appx. 486, 491 (6th Cir. 2017). "A job function is 'essential' if it is 'fundamental' (as opposed to 'marginal'), such that the position is 'fundamentally altered' if the function is removed." *Green*, 683 Fed. Appx. at 491.

U.S. Cargo argues that Hall was unable to perform his position's essential functions, including: loading and unloading his delivery truck, completing his delivery route, maintaining adequate attendance, and "fulfilling his obligation to find a back-up driver." Def.'s Mot. for Summ. J. at 11. While U.S. Cargo asserts that Hall could not perform these four tasks, it only addresses the first three.

Arguing that Hall could not load or unload his delivery truck, complete his delivery route, or maintain adequate attendance, U.S. Cargo relies on statements by Gould, a U.S. Cargo Safety Manager. Gould sent an email to several other U.S. Cargo employees the day before U.S. Cargo terminated Hall, writing:

> Yesterday evening when I was leaving David Hall stopped me in the warehouse and told me that he missed another doctor's appointment today and that is not good. David stated that he asked to run a half day so he could make his appointment and he still didn't get back in time. David stated that this was the 5th appointment he has had to cancel and that he needs to get in and see his Dr. to get medicine. I suggested to him that he should speak to Lowell [(another driver)] and that he might be able to cover his route for a day or so that he could make his appointment. David said that he knows Lowell is busy and probably wouldn't be able to cover his route.
>
> This morning when I came in, David stopped me in the warehouse and stated once again that he missed his Dr. appointment again yesterday (maybe he forgot about the conversation we had yesterday) and that he specifically asked for a half day off so that he could get to the Dr. but that didn't happen. David then started in on this

is a safety issue and me being part of safety should see that this is a safety issue. I explained to David that being an independent contractor this is your business to run. David then stated that he has given us plenty of notice about requesting time off so he can make his Dr. appointments and that we still can't work around it. David said that he can't be any plainer in his explanation that he needs a day off to go see his Dr. and get medicine. David said I don't know what else to say at this point for people to understand. He said that he has two stops on his route today and that there was no way he could do both and in time and that the tires were going to miss their 1 o'clock deadline and that he just can't do both. (The other stop was a paychecks stop) He told me that he was thinking about calling Matt and Dave Hammel [(Director of Operations)] today and let them know that he is not what US Cargo needs to run this route, he said that he can not fulfill the responsibilities of this route in the way that US Cargo thinks it should be covered. I told him that he should have this conversation with Dave Goss first, but he then said that Dave Goss has his own issues that he is dealing with today and I don't want to add what he already has on his plate. He then told me to have a good day and left on route.

Can we take this conversation as an act of wanting to terminate his contract or do we have to wait until David Hall speaks to Matt or David Hammel?

Gould Dep., Ex. 12.

U.S. Cargo asserts this message establishes that Hall admitted "he no longer could fulfill the responsibilities of his delivery route," and that Hall is therefore not a qualified individual under the ADA. In response, Hall argues that Gould's statement that Hall "said he cannot fulfill the responsibilities of the route in a way that U.S. Cargo thinks it should be covered," is actually her misinterpretation of Hall's frustration with missing his doctor's appointments. Pl.'s Memo. in Opp. at 9. Further, Hall argues that he was "absolutely qualified to perform the essential functions of the job with and without accommodation, as he did not have attendance issues, was able to load and unload his truck, and was able to complete his delivery routes." Id.

There is a genuine issue of material fact as to whether Hall is a qualified individual under the ADA. While Gould's reiteration of Hall's statements suggests that he was unable to fulfill his job responsibilities to a certain extent, Gould also testified that she never observed Hall fail to perform his job duties. Gould Dep. Tr. at 72:23–73:2. And May-Gross, the Director of Human

19

Resources, testified that "[t]he only thing that I know, according to [Gould], was that [Hall] was not having difficulty performing his job, but difficulty in scheduling his doctor's appointments." May-Gross Dep. Tr. at 465:22–25. Other than these statements, there is no evidence that Hall was unable to load and unload his delivery truck, complete his delivery route, or maintain adequate attendance. In fact, prior to being terminated, Hall had not missed a day of work for three years. Goss Dep. Tr. at 83:19–21 (ECF No. 119).

Therefore, determining whether Hall is a "qualified individual" cannot be resolved without weighing the evidence and making credibility determinations, which are functions that must be performed by the trier-of-fact. Accordingly, a genuine issue exists regarding whether Hall is a qualified individual. In conclusion, a jury must decide whether Hall can establish a *prima facie* case for disability discrimination.

### c. U.S. Cargo Has Offered a Legitimate, Non-Discriminatory Justification for Terminating Hall.

Next, U.S. Cargo argues that, although Hall has not established a *prima facie* case for his discrimination claim, summary judgment is still appropriate because U.S. Cargo terminated Hall for a legitimate, non-discriminatory purpose. U.S. Cargo asserts that it fired Hall because of his performance issues. This is a legitimate, non-discriminatory purpose. Therefore, the burden shifts back to Hall to prove U.S. Cargo's justification was pretextual.

### d. Hall Has Raised a Genuine Issue as to Whether U.S. Cargo's Justification Was Pretext.

In the Sixth Circuit, a plaintiff can show pretext in three interrelated ways: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the employer's action, or (3) the proffered reason was insufficient to motivate the employer's action. *Ferrari*, 826 F.3d at 895 (citation omitted). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject the

[defendant's] explanation and infer that the [defendant] intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quotations and citations omitted).

Hall argues that U.S. Cargo's proffered reason for firing him—concerns about his job performance—had no basis in fact. U.S. Cargo asserts that it was concerned about Hall's job performance after Hall allegedly told Gould that he was unable to complete his job the way U.S. Cargo saw fit. Both parties dispute what Hall meant by this. U.S. Cargo contends that Hall was expressing that he was unable to load, unload, and deliver freight. In contrast, Hall asserts that he never told Gould that he was unable to complete his job duties but instead explained to her that he was frustrated U.S. Cargo was unwilling to accommodate him for his diabetes. As discussed *supra*, a jury must weigh the relevant evidence and conflicting testimony, not the Court.

Next, Hall argues that U.S. Cargo's justification for termination also has no basis in fact because there is no evidence that Hall was unable to load, unload, and deliver freight. Indeed, Gould and May-Gross both testified that they were unaware of any facts that indicated Hall was unable to perform his job duties. *See* Gould Dep. Tr. at 72:23–73:3; May-Gross Dep. Tr. at 465:19–466:4. Hall adds that U.S. Cargo decided to fire Hall the day after he expressed frustration over the lack of accommodation for his disability. While temporal proximity alone cannot establish pretext, *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 396 (6th Cir. 2017), the additional evidence indicating that Hall was able to complete his duties creates a genuine dispute of material fact regarding whether U.S. Cargo terminated Hall because of performance issues. Accordingly, the Court **DENIES** U.S. Cargo's Motion for Summary Judgment on Hall's disability discrimination claim.

### 2. Hall's Failure-to-Accommodate Claim.

Next, U.S. Cargo moves for summary judgment on Hall's reasonable accommodation claim. To succeed on a reasonable accommodation claim, a plaintiff must first show that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) the defendant knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendant failed to provide a reasonable accommodation thereafter. *Green*, 683 Fed. Appx. at 491. If an employee makes a *prima facie* showing, then the burden of production shifts to the employer to show that the accommodation would constitute an undue hardship. *Mosby-Meachem v. Memphis Light, Gas & Water Division*, 883 F.3d 595, 603 (6th Cir. 2018). As discussed *supra*, there is a genuine dispute regarding the first and second elements. U.S. Cargo argues that summary judgment is still appropriate, however, because Hall has failed to proffer sufficient evidence to create a genuine dispute of material fact regarding the fourth and fifth elements. Therefore, the Court addresses whether Hall requested an accommodation and whether U.S. Cargo provided Hall a reasonable accommodation thereafter.

### a. There Is a Genuine Dispute about Whether Hall's Request Was Reasonable.

U.S. Cargo argues that Hall never requested a reasonable accommodation. When asked what accommodation U.S. Cargo refused to him, Hall responded, "I requested that an allowance would be made on several occasions to enable me to attend doctor appointments, and regularly, because of the volume of the work that I was assigned and was required to complete, I was unable to make those appointments." Hall Dep. Tr. at 325:6–13.

Arguing that Hall's request for occasionally lighter workloads was unreasonable, U.S. Cargo relies on *Green*, in which the Sixth Circuit held that "while a part-time work schedule may be a reasonable accommodation in some cases …, it is unreasonable in situations where the

essential functions of the job require full-time attendance." 683 Fed. Appx. at 491–92. Although

U.S. Cargo correctly points out that a modified workload accommodation is unreasonable where

the job's essential functions require full-time attendance, U.S. Cargo must explain *why* Hall could

not complete the essential functions of his job unless he maintained the same workload. *Hostettler*,

895 F.3d at 856. U.S. Cargo has not done so. Instead, U.S. Cargo argues that a modified schedule

would have kept Hall from completing his contractual obligations, such as showing up to work

and loading, unloading, and delivering freight to customers. That argument is simply *ipse dixit*.

In *Hostettler*, the Sixth Circuit addressed this precise argument and admonished courts against it,

as follows:

> In sum, full-time presence at work is not an essential function of a job simply
> because an employer says that it is. If it were otherwise, employers could refuse
> *any* accommodation that [reduced an employee's standard workload]. That could
> mean denying leave for doctor's appointments, dialysis, therapy, or anything else
> that requires time away from work. Aside from being antithetical to the purpose of
> the ADA, it also would allow employers to negate the regulation that reasonable
> accommodations include leave or telework.

*Hostettler*, 895 F.3d at 857 (citing 29 C.F.R. § 1630.2(o)(2)(ii)) (emphasis in original).

U.S. Cargo also argues that Hall's request was unclear. The Sixth Circuit has explained

that there is "no bright-line test for when the form of an employee's request is sufficiently clear to

constitute a request for an accommodation." *Judge v. Landscape Forms, Inc.*, 592 Fed. Appx. 403,

407 (6th Cir. 2014). "On the one hand, [the Sixth Circuit has] held that the ADA does not require

employees to 'use the magic words "accommodation" or even "disability"'" *Id.* (quoting *Leeds v.*

*Potter*, 249 Fed. Appx. 442, 449 (6th Cir. 2007)). "On the other hand, '[t]he employer is not

required to speculate as to the extent of the employee's disability or the employee's need or desire

for an accommodation.'" *Id.* (quoting *Gannt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–

47 (6th Cir. 1998)). "The employee must make it clear that the request is being made because of the employee's disability." *Id.*

Hall asked Gould for an adjusted workload on July 7th and 8th, so that he could attend his doctor's appointments and obtain medicine. According to Gould's email, Hall had requested similar accommodations five times previously, which U.S. Cargo consistently denied. A reasonable jury could find that Hall's requests for an accommodation related to his diabetes were sufficiently clear and reasonable. Therefore, a genuine dispute exists.

b. There Is a Genuine Dispute Whether U.S. Cargo Reasonably Accommodated Hall.

"The ADA does not obligate employers to make on-the-spot accommodations of the employee's choosing." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018). Once an employee requests an accommodation, the employer has a duty to engage in a "good faith" process and an "individualized inquiry" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Brumley*, 909 F.3d at 840 (quoting 29 C.F.R. § 1630.2(o)(3)) (further citation omitted); *see also Hostettler*, 895 F.3d at 857. There is no evidence that U.S. Cargo satisfied this duty.

Nonetheless, U.S. Cargo contends that it reasonably accommodated Hall by allowing him to take time off so long as he found a replacement driver. But U.S. Cargo also admits that Hall was contractually obligated to find a replacement driver when he was unable to work. *Id.* at 13. Certainly, a pre-existing contractual obligation—which Hall asserts he was unable to utilize — cannot also constitute an accommodation that was developed in "good faith" after an "individualized inquiry."

U.S. Cargo also contends that it accommodated Hall by offering him a list of replacement drivers. Hall asserts that U.S. Cargo's list of drivers were all too busy to cover his shift. A

24

reasonable jury could conclude that U.S. Cargo did not reasonably accommodate Hall's diabetes by providing a list of replacement drivers to him. Therefore, because there are genuine disputes of material facts regarding the first, second, fourth, and fifth elements of Hall's *prima facie* case, the Court **DENIES** U.S. Cargo's Motion as it pertains to the failure-to-accommodate claim.

### 3. Hall's Failure to Engage in an Interactive Process Claim.

Finally, U.S. Cargo moves the Court to enter summary judgment in its favor on Hall's interactive process claim. "Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hostettler*, 895 F.3d at 857. But "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). Because there is a genuine dispute as to whether Hall proposed a reasonable accommodation, summary judgment is precluded on Hall's interactive process claim. Accordingly, the Court **DENIES** summary judgment on that claim.

**IV.**

In conclusion, the Court **DENIES** U.S. Cargo's Partial Motion for Summary Judgment on Count III (ECF No. 103), **GRANTS in PART** and **DENIES in PART** the Motion for Summary Judgment on All Claims Raised by Plaintiff Thompson (ECF No. 106), and **DENIES** the Partial Motion for Summary Judgment on Counts V and VI (ECF No. 109).

**IT IS SO ORDERED.**

6-10-2019
_____
DATE

_____
EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE